**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TRANSCENIC, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., , MICROSOFT CORPORATION, AOL, INC. and MAPQUEST, INC., <br><br> Defendants. | Civil Action No. 11-582-LPS |

**STIPULATED ORDER ESTABLISHING PROTOCOL
FOR ELECTRONIC DISCOVERY**

After conferring on these matters, the Parties hereby propose to the Court an agreed protocol for electronic discovery. Accordingly, for good cause shown,

**IT IS HEREBY ORDERED:**

**A.      DEFINITIONS**

1.      "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

2.      "Paper Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

3.      "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and Paper Discovery.

4.      "E-mail" means an electronic means for communicating written information through non-telephone systems that will send, store, process and receive information.

5.      "Format" means the internal structure of a file, which defines the way it is stored and used.

6.          "Native Format" means the format of ESI in the application in which such ESI was originally created and/or is currently used.

7.          "Party" or "Parties" means Plaintiff Transcenic, Inc., and Defendants Google Inc., Microsoft Corp., AOL Inc., and MapQuest, Inc.

8.          "Defendant Group" means a Defendant or group of Defendants having a parent-subsidiary relationship (*e.g.*, AOL Inc. and MapQuest, Inc.).

9.          "Producing Party" means a Party that produces documents.

10.         "Receiving Party" means a Party to whom documents are produced.

11.         "Responsive Document" means any document that is responsive to any document requests served on the Producing Party in the Litigation that the Producing Party has agreed to produce or that the Producing Party has been ordered to produce by the Court.

12.         "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

**B.          SCOPE**

1.          The procedures and protocols set forth in this Stipulated Order shall govern the production of Responsive Documents between the Parties in the Litigation. Any practice or procedure set forth herein may be varied by written agreement of the Parties.

2.          Nothing in this Stipulated Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Litigation.

3.          Nothing in this Stipulated Order alters or eliminates a Party's obligation at any time to disclose any custodial or noncustodial source of Responsive Documents about which a Party learns during the course of the Litigation or to conduct reasonable searches for and produce Responsive Documents contained therein. The Parties reserve the right to request the production

of documents from noncustodial sources or individuals that were not identified pursuant to Paragraph F and that the requesting Party has a good faith belief possess Responsive Documents.

4.      The Parties shall not be obligated under this Stipulated Order to produce any ESI that is no longer within their possession, custody or control (*i.e.*, lost or deleted) as a result of the routine, good-faith operation of an electronic information system, unless the Party requesting such ESI establishes that there is good cause to believe that the Party from whom such ESI is being requested intentionally failed to preserve, deleted or destroyed the ESI while under an obligation to retain it.

5.      Notwithstanding anything to the contrary herein, the document types identified in Schedule A to the Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI") (Schedule A is attached hereto for reference), are not discoverable in the Litigation except upon a showing of good cause.

6.      The Parties shall meet and confer to resolve any disputes that arise under this Stipulated Order. In the event the Parties cannot reach agreement on a disputed matter, the Parties shall submit the matter to the Court.

C.      **PRODUCTION FORMAT**

1.      **ESI Production Format**: ESI shall be produced electronically, either in native format or as single page, uniquely and sequentially numbered CCITT Group IV TIFF image files not less than 300 dpi resolution to enable the generation of searchable text using Optical Character Recognition ("OCR"). Where text may be extracted when the TIFF image file is generated, the image file shall be accompanied by a text file containing the extracted text; however, there is no obligation on a Producing Party to generate searchable text using OCR. The text files shall be named to match the endorsed number assigned to the image of the first page of the document. The images and text files shall also be accompanied by image cross-reference

load files in the formats reasonably requested by each party (Concordandce/Opticon for Defendants and Summation/dii for Plaintiff) which includes the following fields: "BegProd," "EndProd," "Pages," and "Volume."  The Producing Party shall also provide a data load file ("Data Load File") corresponding to the TIFF image files and the full text files, that shall contain, where reasonably available, the following metadata associated with each file: Custodian, File Path, Email Subject, Conversation Index, From, To cc, Bcc, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End.  For the avoidance of doubt, there is no obligation on the Producing Party to create metadata where none exists or is not reasonably available.  Data Load Files will be provided in both Concordance DAT (for Defendants) and Summation dii (for Plaintiff) with accompanying Summation Summary.TXT files, or in the format requested by each party.

2. **Production of Paper Discovery**:  Paper Discovery shall be converted to electronic form and produced as single page, uniquely and sequentially numbered CCITT Group IV TIFF image files not less than 300 dpi resolution to enable the generation of searchable text using Optical Character Recognition ("OCR").  There is no obligation on a Producing Party to generate searchable text using OCR.  The text files shall be named to match the endorsed number assigned to the image of the first page of the document.  The images and text files shall also be accompanied by image cross-reference load files in the formats reasonably requested by each party (Concordandce/Opticon for Defendants and Summation/dii for Plaintiff) which includes the following fields: "BegProd," "EndProd," "Pages," and "Volume."  The Producing Party shall also provide a data load file ("Data Load File") corresponding to the CCITT Group IV TIFF

image files that shall contain a coded "Custodian" field. A Party need not produce a non-electronic duplicate of any Paper Discovery produced as a TIFF image file pursuant to this Paragraph, except that upon a reasonable request by the Receiving Party and a showing of good cause (*e.g.*, problems with legibility or formatting), the Producing Party must produce the Paper Discovery in its original format at a mutually agreeable time and place.

3. **Appearance and Content**: Subject to any necessary redaction, each document's TIFF image file shall contain the same information and same physical representation as the document did in its original format, whether paper or electronic, consistent with the processing specifications set forth in Paragraph D. Documents that present imaging or formatting problems that the Producing Party has not been able to resolve at the time of production shall be promptly identified by the Producing Party by e-mail to the Receiving Party within twenty (20) days of the production containing the problematic document(s).

4. **Document Unitization**: If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party. If unitization cannot be maintained, the original unitization shall be documented in the data load file or otherwise electronically tracked. For ESI, all unitization should be defined with the data load file, this includes the designation of parent/attachements both for email and attachments and for compressed files (such as ZIP or RAR files) and their contents.

5. **Color**: Documents containing color need not be produced in color unless the Receiving Party makes a reasonable request pursuant to Paragraph C.7 for the production of ESI in Native Format or pursuant to Paragraph C.2 for production of Paper Discovery in its original format, as applicable.

**6.     Document Numbering for TIFF Images**:  Each page of a document produced in TIFF file format shall have a legible, unique numeric identifier ("Document Number") not less than seven (7) digits (with zero-padding) electronically "burned" onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document.  The Document Number for each document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "ABC0000000").  Plaintiff and each Defendant or Defendant Group shall have a unique identifying name.

**7.     Production of ESI in Native Format**:  As set forth in paragraph C.1, the Producing Party shall have the option of producing any documents not easily converted to image format, such as Excel and Access files, in Native Format with an accompanying link in the data load file.  In the event that a Receiving Party requests production of Native Format ESI, the Producing Party and the Receiving Party shall negotiate in good faith about the timing, cost and method of such production.  However, nothing in this Paragraph, except pursuant to Paragraph C.8, is to be read as requiring any Producing Party, absent agreement or court order, to produce ESI in Native Format.  No document produced in Native Format shall be intentionally manipulated to change the appearance or substance of the document prior to its collection, unless a redaction of privileged information is required.  If such redaction takes place, it will be logged in accordance with section F.

**8.     Native File Exceptions**:  Notwithstanding Paragraph C.7, to the extent a Producing Party produces video, animation or audio files such documents shall be produced in their Native Format.

**9.	De-duplication**:  To the extent identical copies of documents (*i.e.*, documents with identical hash values) appear in the production, the Producing Party shall produce only one such identical copy across all Custodians.

**10.	Production Media**:  The Producing Party shall produce document images, load files and metadata on hard drives, CDs, DVDs, via FTP, or other mutually agreeable media ("Production Media").  Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the identity of the Producing Party, the date of the production of documents on the Production Media and the Document Number ranges of the documents in that production (*e.g.*, "ABC Production March 1, 2010, ABC0000123 - ABC0000456").  To the extent that the Production Media includes any information designated as "CONFIDENTIAL," "ATTORNEYS EYES ONLY," "ATTORNEYS EYES ONLY – SOURCE CODE", as defined in the Protective Order, the label on such Production Media shall indicate that Production Media includes information so designated.  Production Media shall include text referencing the case name and number.  Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Document Number range that is being replaced.  All Production Media that is capable of write protection should be write-protected before production.  All Production Media must be properly packaged to ensure safe shipping and handling.  All Production Media shall be encrypted, with the Parties to agree on a decryption key prior to production.  If any piece of Production Media is known to have any physical defect, electronic defect or damaged data, or is infected with any virus or other harmful software of any kind, it should be clearly labeled so that appropriate care can be taken during its examination.  Alternatively, a Party may remove any virus or defect before production but must inform any Receiving Party of any such efforts.

**11.**     **Original Documents**:  Nothing in this Stipulated Order shall eliminate or alter any Party's obligation to retain Native Format copies, including associated metadata, of all ESI produced in the Litigation and original hard copy documents for all Paper Discovery produced in the Litigation.

**12.**     **Third-Party Software**:  To the extent that documents produced pursuant to this Stipulated Order cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

**13.**     **ESI of Limited Accessibility**:  Pursuant to Fed. R. Civ. P. 26(b)(2)(B), a party need not provide discovery of electronically stored information from sources that the party identified as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)C).  Rule 26(b)(2)(C) provides, in part, that the court must limit the discovery if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.

**D.**     **ADDITIONAL ISSUES**

   **1.**     **English Language**:  To the extent any document exists in more than one language, the document shall be produced in English, if available.  If no English version of a document is available, the Producing Party does not have an obligation to produce an English

translation of that document and does not have an obligation to render that document text searchable via OCR or other means.

        2.        **Protective Order**:  The terms of the Protective Order governing the inadvertent production of privileged information also govern all production pursuant to this Stipulated Order.

**E.        PRIVILEGE LOG**

1.        Consistent with Federal Rule of Civil Procedure 26(b)(5)(A), a Party withholding or redacting any Responsive Document on the grounds of privilege, immunity or any similar claim shall provide to the Receiving Party a log containing the information described in Paragraph F.2 ("Privilege Log"), except that the Parties shall not be required to provide a Privilege Log for any Responsive Document that is subject to any claim of privilege or protection, including the attorney-client privilege or work product, that were generated after the date of the filing of the Complaint in this Action.

2.        For each document withheld or redacted, the Privilege Log shall contain the following information:  (i) a sequential number associated with each Privilege Log record, (ii) the date of the document; (iii) the identity of all persons who authored, signed or otherwise prepared the document; (iv) the identity of all persons designated as addressees or copyees; (v) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; (vi) the type or nature of the privilege asserted (*e.g.*, attorney-client privilege, work product doctrine, etc.); and (vii) the Document Numbers corresponding to the first and last page of any withheld or redacted document, if the document has been assigned any such document numbers.

3. Any e-mail stream (*i.e.*, a series of e-mails linked together by e-mail responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be logged as one document and shall be identified by the top-most e-mail in the stream that is withheld or redacted (*e.g.*, if a party withholds on the basis of privilege an e-mail stream consisting of a sent e-mail, a first reply e-mail and a second reply e-mail, the stream shall be identified by the second reply e-mail; if a party produces the same e-mail stream but redacts the sent e-mail and the first reply e-mail, the stream shall be identified by the first reply e-mail). The parties shall not be required to log identical copies of an e-mail that is included in a stream that has been logged in accordance with this Paragraph.

4. Each member of a family that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be identified (*i.e.*, e-mail attaching memorandum), but members of the same family (to the extent such members are also being withheld or redacted) shall be logged together as a single entry on the Privilege Log.

**F.     CUSTODIANS, SEARCH TERMS AND TIMING OF ELECTRONIC DISCOVERY**

Prior to conducting any search of custodian ESI (including but not limited to email), the Parties shall meet and confer to agree upon a reasonable number of ESI custodians, ESI search terms, the time periods to be searched, and any cost sharing or shifting with respect to any ESI. Nothing in this Order creates or confers any right or obligation on the Parties to agree to cost sharing or splitting with respect to ESI. The parties agree that they will only seek that ESI which is relevant to any pary's claim or defense. Any disputed issues that cannot be resolved by the Parties shall be submitted to the Court for resolution.

Agreed to this 14th day of December, 2011:

<div style="column-count:2">

BAYARD, P.A.

 /s/ Stephen B. Brauerman
Richard D. Kirk (No. 0922)
Stephen B. Brauerman (No. 4952)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Tel: (302) 655-5000
Fax: (302) 658-6395
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com

OF COUNSEL:

Timothy P. Maloney
Eric L. Broxterman
Christine Abuel Pompa
David A. Gosse
FITCH, EVEN, TABIN & FLANNERY
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Tel: (312) 577-7000
Fax: (312) 577-7007
tmalo@ditcheven.com
ebroxterman@fitcheven.com
cpompa@fitcheven.com
dgosse@fitcheven.com

- and -

Steven C. Schroer
FITCH, EVEN, TABIN & FLANNERY
1942 Broadway, Suite 213
Boulder, Colorado 80302
Tel: (303) 402 -6966
Fax: (303) 402-6970
scschr@fitcheven.com

*Attorneys for Plaintiff, Transcenic, Inc.*

RICHARDS, LAYTON & FINGER, P.A.

 /s/ Anne Shea Gaza
Frederick L. Cottrell, III (No. 2555)
Anne Shea Gaza (No. 4093)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Tel: (302) 651-7700
Fax: (302) 651-7701
cottrell@rlf.com
gaza@rlf.com
rawnsley@rlf.com

OF COUNSEL:

Ramsey M. Al-Salam
Stevan R. Stark, Jr.
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Tel: (206) 359-8000
Fax: (206) 359-9000
ralsalam@perkinscoie.com
sstark@perkinscoie.com

- and -

Margaret D. Macdonald
PERKINS COIE LLP
700 Thirteenth Street, N.W.
Washington, DC 20005-3960
Tel: (202) 654-6212
Fax: (202) 654-6211
mmacdonald@perkinscoie.com

*Attorneys for Defendant Google, Inc.*

</div>

| RICHARDS, LAYTON & FINGER, P.A. | RICHARDS, LAYTON & FINGER, P.A. |
|---|---|
| /s/Laura D. Hatcher | /s/Anne Shea Gaza |
| Jeffrey L. Moyer (No. 3309) | Frederick L. Cottrell, III (No. 2555) |
| Laura D. Hatcher (No. 5098) | Anne Shea Gaza (No. 4093) |
| One Rodney Square | One Rodney Square |
| 920 N. King Street | 920 N. King Street |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| Tel: (302) 651-7700 | Tel: (302) 651-7700 |
| Fax: (302) 651-7701 | Fax: (302) 651-7701 |
| moyer@rlf.com | cottrell@rlf.com |
| hatcher@rlf.com | gaza@rlf.com |
|  | rawnsley@rlf.com |
| - and - | - and - |
| Scott J. Pivnick | Matthew C. Bernstein |
| Thomas W. Davison | Amy E. Simpson |
| ALSTON & BIRD LLP | Cheng Ko |
| The Atlantic Building | Patrick McKeever |
| 950 F. Street, NW | PERKINS COIE LLP |
| Washington, DC 20004-1404 | 11988 El Camino Real, Suite 200 |
| Tel: (202) 239-3300 | San Diego, CA 92130 |
| Fax: (202) 239-3333 | Tel: (858) 720-5700 |
| scott.pivnick@alston.com | Fax: (858) 720-5799 |
| tom.davison@alston.com | mbernstein@perkinscoie.com |
|  | asimpson@perinscoie.com |
|  | cko@perkinscoie.com |
|  | pmckeever@perkinscoie.com |
| *Attorneys for Defendant MapQuest, Inc. and AOL Inc.* | Chad S. Campbell |
|  | PERKINS COIE LLP |
|  | 2901 N. Central Avenue |
|  | Suite 2000 |
|  | Phoenix, Arizona 85012-2788 |
|  | Tel: (602) 351-8000 |
|  | Fax: (602) 648-7000 |
|  | cscampbell@perkinscoie.com |
|  | *Attorneys for Defendant Microsoft Corp.* |

IT IS SO ORDERED this ___ day of _____, 2011.

_____
United States District Judge