```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                                   - - -
        TRANSCENIC, INC.,
 4      a Louisiana corporation,              :  CIVIL ACTION
                                              :
 5                    Plaintiffs,             :
        v                                     :
 6                                            :
        GOOGLE INC., a Delaware corporation; :
 7      MICROSOFT CORPORATION, a Washington   :
        corporation; AMERICA ONLINE, INC.,    :
 8      a Delaware corporation; and MAPQUEST,:
        INC., a Delaware corporation,         :
 9                                            :  NO. 11-582-LPS
                      Defendants.
10                                   - - -

11                              Wilmington, Delaware
                                Tuesday, March 12, 2013
12                              Telephone Conference

13                                   - - -

14      BEFORE:        HONORABLE LEONARD P. STARK, U.S.D.C.J.

15      APPEARANCES:                 - - -

16                     BAYARD, P.A.
                       BY:  RICHARD D. KIRK, ESQ., and
17                          STEPHEN B. BRAUERMAN, ESQ.

18                          and

19                     FITCH, EVEN, TABIN & FLANNERY
                       BY:  CHRISTINE A. POMPA, ESQ.,
20                          ERIC L. BROXTERMAN, ESQ., and
                            SHANE DELSMAN, ESQ.
21                          (Chicago, Illinois)

22                              Counsel on behalf of Plaintiffs

23


24
                                    Brian P. Gaffigan
25                                  Registered Merit Reporter
```

```
 1    APPEARANCES (Continued)

 2
                RICHARDS, LAYTON & FINGER, P.A.
 3              BY:  FREDERICK L. COTTRELL, III, ESQ., and
                     ANNE SHEA GAZA, ESQ.
 4
                          Local counsel for Microsoft
 5                        Corporation and Google, Inc.

 6                   and

 7              PERKINS COIE LLP
                BY:  MATTHEW C. BERNSTEIN, ESQ.
 8                   (San Diego, California)

 9                   and

10              PERKINS COIE LLP
                BY:  MELODY K. GLAZER, ESQ.
11                   (Madison, Wisconsin)

12                        Counsel for Microsoft Corporation

13                   and

14              PERKINS COIE, LLP
                BY:  RAMSEY M. AL-SALAM, ESQ.
15                   (Seattle, Washington)

16                   and

17              PERKINS COIE, LLP
                BY:  VICTORIA Q. SMITH, ESQ.
18                   (Palo Also, California)

19                   and

20              PERKINS COIE, LLP
                BY:  MARGARET D. MacDONALD, ESQ.
21                   (Washington, District of Columbia)

22                        Counsel for Google, Inc.

23

24

25
```

1                        - oOo -

2                  P R O C E E D I N G S

3            (REPORTER'S NOTE:  The following telephone

4    conference was held in chambers, beginning at 9:02 a.m.)

5            THE COURT:  Good morning, everybody.  This is

6    Judge Stark.  Who is there, please?

7            Counsel, this is Judge Stark.  Good morning.

8    Who is there, please?

9            MR. BRAUERMAN:  Good morning, Your Honor.  This

10   is Steve Brauerman from Bayard.  I'm joined by my partner

11   Richard Kirk, also of Bayard, and our co-counsel Eric

12   Broxterman, Christine Pompa, and Shane Delsman from Fitch

13   Even Tabin & Flannery in Chicago.

14           THE COURT:  Okay.  Thank you.

15           MR. COTTRELL:  Your Honor, for defendants Google

16   and Microsoft, Fred Cottrell and Anne Gaza in Delaware.

17   And, from Perkins Coie, my co-counsel from Google, Ramsey

18   Al-Salam, Margaret MacDonald and Victoria Smith; and also

19   from Perkins Coie, my co-counsel for Microsoft, Matt

20   Bernstein and Melody Glazer.

21           THE COURT:  Okay.  Thank you.  I have my court

22   reporter here with me.  For the record, this is our case of

23   Transcenic Inc. v Microsoft et al., Civil Action No. 11-582-LPS.

24           We're here to discuss discovery disputes as

25   between the plaintiff and Microsoft and as between the

1    plaintiff and Google.  I want to start with the disputes

2    relating to Microsoft.  I believe that there are two of them.

3    I want to hear about each of them separately, so whoever is

4    going to address for the plaintiff the issue about the metrics

5    and the request for additional metric information for the

6    plaintiff, let me hear from them first, please.

7             MS. POMPA:  Thank you.  Good morning, Your

8    Honor.  This is Christine Pompa on behalf of Transcenic.

9             The accused feature in this case is Streetside,

10   and that feature is integrated into several of the Bing

11   web pages; specifically, Map Search and Local.  All these

12   are, are really designed to be used together.  Since the

13   Streetside feature accesses different web pages, the traffic

14   and usage metrics are highly relevant.  They can be used to

15   evaluate the impact that certain features have on others.

16   They can be used to determine how Microsoft would generate

17   advertising revenue, and it is also used to determine

18   whether and how to invest or to continue investing in

19   particular features.

20            More specific to the *Georgia-Pacific* factors, all

21   of these metrics are highly relevant to the specific factor

22   that related to the extent and value of the infringing use.

23   So as a result, the metric information that Transcenic is

24   seeking is very critical for us to conduct our damages

25   determination in this case.  It's Transcenic's understanding

that all the metrics that it is seeking from Microsoft are collected and stored in the ordinary course of business and as such are accessible via query.

To date, Microsoft has produced only limited usage and metric information.  With respect to the Streetside metric, they've produced two documents that contain some metric information.  However, the two documents that they contained which they represented are the only two documents that are maintained in the ordinary course of business that contain Streetside metrics are incomplete and don't even go back to the introduction of the accused feature back in 2009.

While Microsoft has agreed to produce additional metrics, it still has not agreed to provide a complete picture, and a complete picture is necessary for our damages expert to adequately analyze the usage of the accused device and determine its effect on the value of that feature and how it relates with the other websites.

With respect to Bing Maps metrics, Microsoft hasn't produced any metrics pertaining to Bing Maps, and since Streetside is a feature within Bing Maps, metrics related to Bing Maps is necessary for us to be able to appropriately apportion any of the revenue that Microsoft realizes from Bing Maps.

With respect to Local and Search metrics, in its

1    March 5th responsive letter brief, Microsoft agreed to

2    produce impressions and clicks for Streetside links within

3    the search results in addition to total visits for search.

4            We haven't received that information yet, but

5    at this time Microsoft still refuses to provide additional,

6    metrics related to Local and Search.  Again, complete

7    metrics would allow Transcenic to assess the economic impact

8    of the accused feature not only as a stand-alone feature but

9    it would allow us to determine how that feature adds value

10   to other Microsoft products.  And it's relevant to show the

11   overall value of not only maps with Streetside but the

12   increased value it has to maps, Local and Search.

13           The reason all of this is required and so

14   important is because under *Uniloc* and its predecessors, if

15   Transcenic cannot satisfy the entire market value rule, it

16   is imperative for Transcenic to correctly apportion the

17   royalty base as the first step of calculating a reasonable

18   royalty.

19           What we're really trying to do here, Your Honor,

20   is we're trying to create an appropriate royalty base.  In

21   doing that, we need to correctly allocate revenue.  And

22   then we would move on to determine the royalty rate.  But to

23   get there we have to start from Search.  And to apportion,

24   we need to use all of the metrics that are available and

25   relevant so that we can make whatever apportionment is

1     necessary.

2                    Microsoft will have plenty of opportunity to

3     challenge Transcenic's damages model, but in refusing to

4     produce the relevant damages that Transcenic is seeking,

5     Microsoft is essentially preventing us from even creating

6     a damages model in the first place.  It's improper for

7     Microsoft to try to preempt Transcenic's ability to even do

8     its damages analysis in the first place.

9                    THE COURT:  All right.  Let me interrupt you

10    there.

11                   MS. POMPA:  Sure.

12                   THE COURT:  You have said you need complete

13    metrics, all metrics.  Microsoft says there is so many of

14    them, I don't know, 10-12 per program perhaps, and that it's

15    going to take a month or so of work if they have to write a

16    program to be able to retrieve all of the metrics that you

17    are looking for.

18                    Address from your view, if you know, how many

19    actual different metrics you are seeking.  And are there

20    some that are more important than others that you don't

21    have?

22                   MS. POMPA:  Yes, Your Honor.  The number of

23    metrics that we're actually seeking, if we take away some of

24    the metrics that Microsoft has recently agreed to provide

25    us, I think we're looking at about eight separate metrics.

1              Our understanding from Microsoft's witness on

2    the topic of metrics is that once a query is written for a

3    particular metric, it can be applied across the other web

4    pages or other features, if you will.  And we also, during

5    the deposition of the same witness, learned that it takes

6    a day or two to create such a program which would run the

7    query, and that it really isn't that difficult of a task.

8              THE COURT:  All right.  So your belief is that

9    only at most eight query programs would have to be written

10   to provide all of the metrics that you are seeking that have

11   not already been agreed to be produced; is that fair?

12             MS. POMPA:  That's my understanding, Your Honor.

13   Yes.

14             THE COURT:  Let me hear from Microsoft, please.

15             MR. BERNSTEIN:  Thank you, Your Honor.  This is

16   Matthew Bernstein.

17             Just to actually walk through the metrics that

18   Microsoft has already either already produced or agreed to

19   produce, I think it's important because I think we are

20   giving them -- you know, they went through, they pointed to

21   the *Georgia-Pacific* factors, *Uniloc*, and why they need this

22   information for their damages theory.  And we're certainly

23   not trying to preclude them from providing that.

24             But as Ms. Pompa said, Streetside is accessed

25   through different pages on Microsoft website.  Typically

1    it's accessed through the Bing.com Maps.  And for that, we

2    have provided unique Streetside user data, and we provided

3    all of that unique Streetside user data that is available

4    when people access through Bing Maps.

5           We've also provided usage data that shows the

6    Bing Maps image tile downloads.  And that is not just when

7    people access the Streetside imagery but also the other Map

8    imagery.  There is also some old usage numbers as well.  So

9    that is when folks access Streetside through Maps.

10          Now, when people access Streetside through

11   Microsoft Search or what Transcenic calls Local search, what

12   Microsoft has agreed to produce is the following:  the total

13   number of Bing.com searches, the total number of Bing.com

14   searches that are also Local searches, the total number of

15   just Local searches, the total number of searches that have

16   the link to the Streetside functionality, and the total

17   number of Streetside links that are actually clicked on.

18          To us, that clearly gives them the information

19   that they need to set forth any sort of damage theory.  In

20   their letter brief, they said that they wanted to put in

21   context how Streetside plays a role and what role it plays

22   in the overall Bing website.  And, we are giving them the

23   information that enables them to actually see that.  Either

24   we have given them or we had agreed to give them that

25   information.

1              Now, with respect to the issue of how one

2      actually acquires this usage data or metric data, it is not

3      as simple as Ms. Pompa indicated.  Yes, it is, you do have

4      to write a script or computer program to access this big

5      glob of user information.  But for every single metric that

6      one wants to attempt to obtain data on, it's as Mr. Lawler

7      testified at his deposition at page 100:  It's one to two

8      days to write the script or write the code to pull any

9      particular piece of metric data.

10             If there is multiple metrics, eight, for

11     example, that is eight to 16 days, and then we would have

12     to QC that.

13             But, again, with the information we provided

14     them, it's unclear why that isn't more than sufficient for

15     them to get the picture or get an understanding of

16     Streetside, of Search, of Local that they're asking for.

17             THE COURT:  Well, give me an example of a metric

18     that they're seeking that you're not giving them.

19             MR. BERNSTEIN:  Well, you're asking I guess

20     if, in all due respect, Your Honor, if there is a -- we

21     can't even determine what information is available in those

22     metrics without running a script to try to pull something.

23     So if they have a specific request for some piece of data,

24     they would, for example, session length, we would have to

25     attempt to write some computer code to see if we can pull

1    out "session length" for Streetside uses.

2         THE COURT:  Well, what I'm having trouble

3    understanding from your perspective is my sense is you

4    collect all sorts of data about how all your various

5    websites are used and users can get to the Streetside

6    functionality in all sorts of ways.  My understanding is

7    somewhere you have the data on all these different ways

8    people get to it, how long they do it, what they're doing

9    there, and it's just a matter -- I don't minimize it, but

10   it's a matter of something like a day or two to come up

11   with program for each metric.  But the data is there, and

12   I'm having a hard time understanding where it is you're

13   drawing the line and why it is you guys get to draw the line

14   and the plaintiffs don't.

15        MR. BERNSTEIN:  Well, Your Honor, I guess we

16   would -- you are correct that Microsoft tracks an incredible

17   amount of data.  But Microsoft does not, in the ordinary

18   course of business, it doesn't access most of that data.

19   Basically, if there is some specific need and there is a

20   business justification for pulling it, Microsoft would look

21   into seeing whether they would pull that data, spend the

22   time and the effort to do that.

23        To a certain extent, we've done that.  And

24   we've agreed to do that specifically with respect to Search

25   and Local.  I guess our issue is that we're not drawing the

1    line but at some point we need to come to some understanding

2    as to what is reasonable and what is not.  For example, the

3    session length.  Why is that information not cumulative to

4    the information we're providing to them, which, for example,

5    with respect to Search, identifies the total number of

6    search, the number of searches that display the Streetside

7    link and the number of times that users click on the link.

8    I mean, to us, anything else would be cumulative and

9    requiring us to spend the time and effort in this particular

10   case would be burdensome.

11          THE COURT:  All right.  You write in your

12   March 5th letter, Transcenic has identified at least nine

13   separate metrics for Streetside alone.  Do you have a number

14   that you can give me as to how many metrics you believe it

15   is that the plaintiffs are asking for altogether?

16          MR. BERNSTEIN:  Your Honor, I mean the best I

17   can do is nine because I truly do not understand what they

18   mean by "complete set."  I think that is the terminology

19   they use.  I mean that is not something -- we've asked

20   Microsoft if they have an understanding as to what that

21   means, and they don't.

22          THE COURT:  All right.  So you think it's nine,

23   but it's nine times what?  At least three?  Because there is

24   at least three different ways to get to Streetside that the

25   plaintiffs are interested in?

1          MR. BERNSTEIN:  Correct.

2          THE COURT:  So 27?

3          MR. BERNSTEIN:  27.  Some of which we have

4    provided or are agreeing to provide, but that is the scope

5    of what they're looking at.

6          THE COURT:  So that was my next question.  Out

7    of the 27, how many have you agreed to provide or will

8    provide?

9          MR. BERNSTEIN:  I would say we agreed to provide

10   eight or nine.

11         THE COURT:  All right.  Well, I'm thinking that

12   I let the plaintiff ask you for, let's say, three more to

13   get us to 12, and they can pay you for any more between 12

14   and 27 they want.  Tell me what would be wrong with that

15   resolution?

16         MR. BERNSTEIN:  It sounds like a reasonable

17   resolution, Your Honor.

18         THE COURT:  All right.  Ms. Pompa, what do you

19   think?

20         MS. POMPA:  So, Your Honor, just to make sure

21   that I understand.  We're entitled to three more additional

22   metrics per website?

23         THE COURT:  No.  As I understand it, they

24   believe you have asked for nine, and you want all nine for

25   each of three websites.  That's how we get to 27.  They say

1    they have given you nine.  I'm going to give you the chance

2    to demand and get production of three more.  So now we're up

3    to 12.  Then I will let you, if you want any between 12 and

4    27, you are going to have to pay at least for the time it's

5    going to cost Microsoft to write the program to retrieve it

6    and perhaps other reasonable costs, if there are other costs.

7              MS. POMPA:  Your Honor, we think something like

8    that would be, you know, we could definitely work with.  I

9    guess the only difficulty that we have is that each of these

10   metrics, you know, Mr. Bernstein characterizes a lot of the

11   stuff as cumulative, but each of these metrics measure a

12   very different thing.  For example, unique user, a unique

13   user metric counts the number of distinct people that are

14   visiting a website whereas a peer visit is whenever anyone

15   arrives at your website and starts looking at pages.  So

16   they measure different things and can tell us or our damages

17   expert very different things about how a certain feature is

18   performing in the short term versus the long term, et cetera.

19             THE COURT:  All right.  I understand that.

20   Well, here is my ruling.

21             I think that what the plaintiff is seeking is

22   relevant, but there does have to be a limit.  And, I think

23   that Microsoft has been attempting to place a reasonable

24   limit while not depriving the plaintiff of their ability to

25   make out their damages theories.  I'm persuaded that the

1    plaintiff has articulated relevant damages theories and that

2    they do need to try to create different approaches to a

3    royalty base.  I think that is all correct, but that doesn't

4    necessarily mean that you are entitled to absolutely every

5    metric on all three websites and choices and priorities have

6    to be made.

7            So based on my understanding of the numerical

8    universe at this point, the defendant has agreed already to

9    provide nine of these metrics.  I hereby order the defendant

10   to produce three more, whatever three the plaintiff elects and

11   notifies the defendant of in a timely manner.  And,

12           If, beyond those additional three, so above 12,

13   the plaintiffs want any more, they're entitled to those as

14   well as long as the plaintiff pays the reasonable costs to

15   compensate Microsoft for retrieving those additional metrics,

16   anything beyond 12.

17           I think that is an appropriate resolution and

18   should allow the plaintiff to get what they need after they

19   make some additional decisions as to what is most important

20   and requires the defendants to produce important discovery

21   but not to be unduly burdened.

22           We have a lot more to cover and not much more

23   than 20 minutes to do it, but are there any questions about

24   that, Ms. Pompa?

25           MS. POMPA:  Yes.  I just have one clarification,

1    Your Honor.

2              My understanding is that the defendants have

3    agreed to or already produced only four metrics, not nine.

4    So we're fine with the final number of 12 but I just wanted

5    to clarify that unless I am miscounting.

6              THE COURT:  Well, you are all going to have to

7    talk about that off-line.  My firm hope is that you all can

8    count the same way.  If you can't, then we'll be back on the

9    phone at some point.

10             MS. POMPA:  Okay.

11             THE COURT:  Mr. Bernstein, are there any

12   questions about that?

13             MR. BERNSTEIN:  No, Your Honor.  We'll work with

14   the other side on that.

15             THE COURT:  All right.  Then the plaintiff was

16   seeking from Microsoft 30(b)(6) witnesses on four topics.

17   Is that still an issue?  I ask first of Transcenic.

18             MS. POMPA:  Yes, Your Honor.  That is still an

19   issue.  And also, I believe in our letter we wrote one of

20   those topics was topic 12.  That should have been topic 13.

21             THE COURT:  So now in their letter, Microsoft

22   says it will be bound for 30(b)(6) purposes by the answers

23   you have already been given.  Why does that not take care of

24   the dispute?

25             MS. POMPA:  Well, it doesn't really take care of

1    the dispute, Your Honor, because we don't believe that by

2    designating these witnesses' limited and personal knowledge

3    after the fact satisfies their duties under Rule 30(b)(6).

4    The cited testimony by Microsoft is from witnesses who

5    weren't designated or prepared to testified on those topics.

6            THE COURT:  Give me your best example of a

7    witness on a topic where you think there is more to get,

8    that they could be prepared for 30(b)(6) purposes.

9            MS. POMPA:  Sure.  For example, for Topic No. 2

10    which was directed to Microsoft strategies for attracting

11    and retaining users for www.bing.com, we asked some limited

12    questions of Ms. Stock whose testimony was provided in

13    response to our letter.  But that witness personally wasn't

14    involved in any of the strategy.  She admittedly stated that

15    she wasn't part of any of the discussions regarding any of

16    the strategies related to Bing Maps or Streetside.

17            With respect to Topic No. 12 --

18            THE COURT:  That's fine.  Let me hear from

19    Microsoft, please.

20            MS. POMPA:  Okay.

21            MR. BERNSTEIN:  So, Your Honor, there were, they

22    noted 84 30(b)(6) topics.  They have issue with four of

23    them.  With respect to Topic 2 or the rest of the topics,

24    you know, to take this out of a vacuum, Lori Stock was

25    Microsoft's 30(b)(6) witness on a host of topics including

1    as it relates to Topic No. 2.  Topic No. 6 which were the

2    reasons or business justifications for adding Streetside.

3    Topic No. 9 which were advertising promotion of Streetside.

4          Our issue with Topic No. 2 was that it, as written,

5    in no way related to the accused product.  We provided across

6    the board witnesses, 30(b)(6) witnesses on anything having

7    to do with Streetside.  Whether it's financial, technical,

8    marketing, we provided those witnesses.  So we have provided

9    30(b)(6) testimony as it relates to the case.  Ms. Stock sat

10   for eight hours, eight and-a-half hours of deposition.

11         Another witness, Blaise Aguera, provided testimony

12   to four topics that are at issue.  So to the extent that there

13   is any issue that certain lines from the transcript is not

14   30(b)(6) testimony as it relates to those topics, we are more

15   than happy, as we said, to have that designated as 30(b)(6)

16   testimony but there is nothing that Microsoft witnesses didn't

17   -- legitimate that Microsoft witnesses weren't prepared to

18   testify as 30(b)(6) witnesses on.

19         THE COURT:  All right.  Then, Mr. Bernstein, if

20   I did grant the relief that the plaintiff is seeking here

21   and order you to produce 30(b)(6) witnesses on these four

22   topics, is there anything that Microsoft would do other than

23   just adopt what has already been testified to?

24         MR. BERNSTEIN:  Your Honor, I believe the answer

25   to that is, no, there is nothing else we would do.  We would

1    point to the testimony of our witnesses already, who have

2    already testified.

3              THE COURT:  All right.  Ms. Pompa, is there

4    anything else on that?

5              MS. POMPA:  Yes.  Just one, Your Honor.

6              Several times during the deposition, the witness

7    would say that she wasn't personally aware of a particular

8    analysis.  That kind of testimony, while it is perhaps true

9    because it's her personal knowledge, how that binds

10   Microsoft doesn't -- I mean the question is to Microsoft and

11   not to the witness's personal knowledge.

12             THE COURT:  All right.  Thank you.  I'm granting

13   the plaintiff's request.  Microsoft has to produce a witness

14   responsive on 30(b)(6) to these four topics, but if Microsoft

15   thinks that it can adequately meet its 30(b)(6) obligations

16   by somehow memorializing that the testimony already given in

17   a personal capacity is hereby adopted for 30(b)(6) purposes,

18   then I will let them do that.  But it's up to Microsoft to

19   determine if that is actually going to be the way that they

20   wish to satisfy their obligation and my order.  So I'm

21   granting the relief sought by the plaintiff.

22             Let's move on to the plaintiff's issues against

23   Google.  Let me first say we're not going to be addressing the

24   additional issues that are listed and referenced at least in

25   footnote 1 in plaintiff's letter.  The three-page limit, of

```
 1    course, on the letters is intended to have parties prioritize

 2    those disputes that merit argument and merit the Court's time.

 3    So we will do our best to address in our remaining minutes

 4    what is argued in the three pages and not the so-called

 5    additional issues.

 6              Let's first start with the plaintiff is seeking

 7    an order compelling Google to produce some information

 8    regarding the Local Universe.  So let me hear briefly from

 9    the plaintiff on that, please.

10              MR. DELSMAN:  Good morning, Your Honor.  This is

11    Shane Delsman on behalf of the plaintiff.

12              Your Honor, there is no dispute that Transcenic

13    has properly accused Google Maps with Street View of

14    infringement.  Google even admits the same in its letter to

15    the Court.  And Google has agreed to produce traffic metrics

16    and revenue for Maps so that Transcenic can properly

17    apportion a value of Street View and Maps.

18              Search works the exact same way with regards to

19    Street View as does Maps.  If I describe one way of getting

20    to the Street View feature as entering a search, receiving a

21    Street View image as a result, and clicking that Street View

22    image to accept the Street View feature, you wouldn't know

23    whether I am describing Search or Maps because they work

24    identically.  Therefore, Maps is a possibly accused product.

25    Search should be as well.
```

1          Transcenic needs the traffic and revenue

2     information for Search so that it can similarly apportion

3     the value of Street View, the Street View feature in Search.

4          There is no doubt that feature added value to

5     Search.  Google even said the same in a press release which

6     was quoted in our letter.  To quote the press release,

7     Google said, "A few improvements to Google Search will make

8     it a lot easier and faster."

9          And then it goes on to describe, "Clicking on

10    the Street View image" -- I'm quoting -- "able to look

11    around the outside of the restaurant to get a sense of the

12    neighborhood yields a familiar Street View experience."

13         This is not a simple case where damages can be

14    determined by the number of products sold or the increase in

15    products sold due to the addition of a claimed invention.

16    In this industry, it's extremely important to keep users

17    coming back to a website.  This is because each time a

18    customer comes back to a website, a sale is made from the

19    sales advertising presented to the user or clicked on by the

20    user for which Google gets paid.

21         Google wants to attract users to its search

22    page because search is a most heavily modified product with

23    advertising.  One way that Google attracts users is by

24    having it be a one-stop shop, so to speak, where you can

25    enter a search for anything, images, videos, Maps, Street

1    View, and it will determine the intent of your search and

2    return what it hopes to be relevant results.  Results

3    include advertisements and its own products such as YouTube

4    and Street View.

5              Therefore, it's important for Transcenic to be

6    able to properly determine the amount of times Google deems

7    the intent to be location based and returns a Street View

8    image or a map and the number of times a user clicks on the

9    Street View or Map image so as to be able to apportion a

10   value attributable to Street View, as Ms. Pompa spoke with

11   regards to *Uniloc*.

12             In this particular situation, Your Honor,

13   Google is the only defendant that is not providing this

14   information.  Both AOL/MapQuest and Microsoft have produced

15   such metric information.

16             Google's reason for not producing it is

17   basically an intermixture of two separate issues relevant

18   for discovery and infringement contentions.  The test, as

19   Your Honor I'm sure knows, the test for discovery is

20   relevance or reasonably calculated to lead to admissible

21   evidence.

22             Whether we have formally accused Search of

23   infringement on a claim by claim basis as Google contends

24   has no bearing as to whether Search discovery requested is

25   relevant or likely to lead to admissible evidence.  However,

```
 1    I think we have shown through our letter and as I briefly

 2    spoke about that Search is relevant and at the very least

 3    likely to lead to the discovery of admissible evidence for

 4    both infringement and damages.

 5              Regardless, we put Google on notice of our

 6    contention that Search infringes because we have stated so

 7    in our e-mail that goes back to February 4th describing

 8    exactly why and how we believe Street View with regards to

 9    Search is an infringing product and because Search and Maps

10    works the same and we have gone on a claim by claim basis in

11    great detail in our infringement contentions to describe

12    that infringing feature.  Therefore, we believe that Google

13    should produce revenue and search metrics for Search, Your

14    Honor.

15              THE COURT:  All right.  Now, I'm sure you have

16    seen in their letter they cite to an earlier order I issued

17    in this case regarding MapQuest, links to MapQuest from one

18    of AOL's pages, and they say what you are seeking from them

19    now is analogous to what I did not require there.  How would

20    you respond to that?

21              MR. DELSMAN:  Sure, Your Honor.  Thank you.

22              First, I think the most telling fact is that

23    AOL and MapQuest subsequently agreed to produce it after

24    Your Honor gave the order, but it's a different situation

25    because AOL was a completely different company, although a
```

1    parent of MapQuest, but also because AOL did not return a

2    360 view image in the search results and because they had

3    already taken down a product prior to us coming before the

4    Court on that issue.

5            In this case, Google returned to Street View

6    image.  They continue to add Street View functionality to

7    more products, including as we're just describing Search.

8    So it's a completely different situation.

9            THE COURT:  All right.  You referenced the

10   public statement a moment ago.  It's in your letter, too.

11   Google says from that that you really should not in any way

12   be surprised that they're adding this functionality and they

13   try to use that against you for purposes of this request.

14   Respond to that.

15           MR. DELSMAN:  Sure, Your Honor.

16           It's true there were a handful of documents

17   that Google produced amongst its hundreds of thousands of

18   pages of documents that related to something called Local

19   Universe.  It's our position and our belief there is no way

20   we could have understood these very brief references without

21   an explanation which was subsequently provided by Google's

22   January 29th witness.

23           But, regardless, this argument would have some

24   merit if Google would have identified Search or Local

25   Universe in interrogatories wherein we ask for any product

1    software or service that includes a Street View feature, but

2    Google has completely failed to identify any products other

3    than Maps or Earth.  And,

4            Google has actually agreed to provide enterprise

5    products, for example, Your Honor, that include a Street

6    View feature or functionality.  And even though they admit

7    that these enterprise products have a Street View function

8    or feature, they don't, they didn't even add these to their

9    interrogatory responses.  And as we're going to talk about

10   coming up, they didn't add the Street View with regards to

11   Audi or BMW as one of these product software services.

12           So had they identified them, as they clearly

13   should have, then they would have had a legitimate argument

14   that we should have followed up on it, but the fact is that

15   we didn't find out about this until January 29th, and then

16   on February 4th we asked Google for a witness.  So there

17   is only about six days between the time that we were made

18   aware of what this feature really was and when we asked for

19   a Google witness.

20           THE COURT:  All right.  Thank you.  Let me hear

21   from Google on this, please.

22           MR. AL-SALAM:  Thank you, Your Honor.  This is

23   Ramsey Al-Salam.

24           Your Honor, this is a case about Street View.

25   It's not a case about Search.  They are trying to

1    fundamentally change what the accused product is in the case.

2    As the Court is aware, Search is a very large profitable

3    product or service provided by Google.  Throughout this entire

4    case, we understood the case was about Street View, and we had

5    provided all the financial information and everything else

6    that could be relevant to Street View.

7            Now, they've mentioned the *Uniloc* case a few

8    times, so I want to remind the Court what was held in that

9    case.  In that case, the patented feature related to product

10   activation, and it was connected with all Microsoft Office

11   and all Microsoft Windows.  Nevertheless, the Federal

12   Circuit held that it was error for the District Court to

13   even have allowed the sales numbers of Windows and Office

14   to be submitted to the jury because unless that product

15   activation feature provided the entire market value for

16   those products that the sales of those products should not

17   have been submitted to the jury, those numbers.  So a new

18   trial on damages was required.

19           In this case, there is no plausible claim that

20   the entire market value of Google's search is based upon the

21   fact that in some minuscule percentage of searches, an image

22   will be returned that, if clicked, will allow you to access

23   Street View.

24           In that regard, I just want to point out that

25   no information has been provided about exactly when these

1    Street View images come up.  But as the Court is well aware,

2    that wouldn't even come up unless you did a search for a

3    restaurant or some local business.  The vast majority of

4    searches on Google Search have nothing to do with that.  If

5    you are searching for a person or a product or a company or

6    the answer to a question or an author or whatever else you

7    would search for, it's rare that you would ever get a search

8    that would return a Street View image.

9            THE COURT:  I'm having a hard time understanding

10   your argument here.  Are you contending it's not relevant or

11   that it's relevant but it's just really not that important?

12           MR. AL-SALAM:  It's not relevant.  It's clearly

13   not admissible.  What they want to do is find out all our

14   revenue for Search, for Google Search and they want to try

15   to use that revenue to somehow, as they themselves admit, as

16   some type of royalty base to get to Street View.  But the

17   fact is it's not admissible.  It's clearly not admissible.

18           THE COURT:  Okay.  But I'm sure you would

19   acknowledge we're not at the admissibility stage.  We're at

20   an earlier stage.  I'm having a hard time understanding how

21   it's not even relevant for discovery purposes when, if I'm

22   understanding correctly, and I think you have even written

23   in your letter, Search can serve as essentially a link to

24   the Street View system, and Street View is what is accused,

25   and Street View is what ultimately the plaintiff, if they

```
 1    can prove it's infringing, need to prove a value of that
 2    infringement.  So if all of that is correct, I'm having a
 3    very hard time understanding how it is not within the very
 4    broad scope of relevance.
 5              MR. AL-SALAM:  I guess, Your Honor, the position
 6    is that it's true that some minuscule number of searches
 7    will give you access to Street View, but that doesn't open
 8    the door to getting all of Search revenue.
 9              THE COURT:  All right.  Well, help me inform
10    that argument.  It sound like maybe it's a burden argument
11    or an overbreadth argument.  I'm not understanding the
12    relevance argument but maybe you have got a burden argument.
13    How difficult is it going to be for you to produce this
14    stuff?
15              MR. AL-SALAM:  Well, I guess it depends on "what
16    this" stuff means.  I'm not sure what it means.  I know
17    they want all our financial information relating to Google
18    Search.  Our view is that is clearly going to be inadmissible,
19    so it's not even discoverable because it can't lead to
20    admissible evidence.  They can't plausibly take the Search
21    revenue that we received and put it in front of the jury or
22    use it for damages purposes under the Uniloc type case.
23              The numbers that we have for revenue from Search
24    are wholly -- are some small percentage, and I don't know
25    what that percentage is but it must clearly be less than one
```

1   percent and even less than point one percent of searches

2   return a Street View image, and to try to take that and

3   leverage it into using the Search revenues as a basis for a

4   royalty for Street View goes even beyond what *Uniloc* was.

5   At least in *Uniloc*, product activation was in every single

6   product and the Court still wouldn't allow that to be

7   admitted.

8           THE COURT:  All right.  Thank you.  I've tried

9   to understand the objection.  To the extent I understand it,

10  I'm not persuaded by it.

11          I'm granting the plaintiff's request here.

12  What I understand to be the request is specifically set out

13  at the top of page 3 of the letter from the plaintiff

14  relating to their complaints about Google.  For reasons I

15  have tried to articulate I think and as the plaintiff has,

16  I think this information is relevant.  I'm not really

17  hearing a burden argument, I'm hearing an admissibility

18  argument which is premature.

19          Plaintiff make not succeed on this theory, they

20  may not be permitted to present this data to the jury, but

21  those are not the issues for today.  I think it's within

22  the broad scope of discovery, and so I'm ruling for the

23  plaintiff on that.

24          Let's briefly move on to what I think is the

25  final issue for today, and it's already been alluded to.

1    The plaintiff is also seeking, I think it's a 30(b)(6)

2    witness relating to the automobiles and the agreements that

3    Google has with some automobile manufacturers.  Let me hear

4    briefly from the plaintiff on that.

5              MR. DELSMAN:  Thank you, Your Honor.

6              There is no dispute the agreements between

7    Google and Audi and Google and BMW include Street View.

8    There is no dispute the Audi includes a large fee per year

9    for access to Street View.  There is no dispute that Audi

10   paid an NRE engineering fee in the BMW agreement or that

11   there is a cost per transaction fee for such Street View

12   access.

13             The dispute centers on whether Google should

14   have produced or should be compelled to produce discovery

15   regarding technical information on how Street View works

16   and, Your Honor, deposition testimony regarding the contract

17   and surrounding negotiations that led to the contract.

18             We believe that the answer is, yes, Google

19   should have to produce both of this information.

20             However, Google once again intermixes the

21   argument of relevance and our infringement contentions to

22   avoid such presumption.  Google argues that Street View

23   feature provided in the automobile agreement is simply an

24   iteration of the Street View.  Therefore, Google argues it

25   didn't have to identify Street View from the auto agreements

1    in response to Interrogatory 1 or provide any technical

2    information.  Google further maintains it need not produce

3    any information regarding Street View from the automobile

4    agreements because Transcenic has not asserted infringement

5    of such Street View.

6            Well, first, with regards to that, just to

7    address that briefly, we have supplemented our contention to

8    include the automobile Street View version, just to put this

9    issue to bed once and for all.

10           But the arguments also run because there is a

11   difference between relevance and our requirement to prove

12   infringement.  And it's also hard to understand, Your Honor,

13   how the Street View feature from automobile agreements can

14   be an iteration of the accused Google Earth with Street View,

15   yet not be relevant enough for Google to produce discovery.

16           THE COURT:  All right.  Thank you.  I think I

17   understand your position.  Let me hear from Google, please.

18           MR. AL-SALAM:  Your Honor, we have produced

19   discovery.  We have produced the agreements.  We have not

20   withheld any documents relating to the agreements or the API

21   that is used for access to Street View.

22           We understood the dispute is only whether we

23   now need to produce yet another -- we have had two witnesses

24   testify about the agreements generally and about the

25   implementation.  I understood the dispute was whether or not

1    we need to produce an additional witness to talk specifically

2    about the negotiation of the agreement.

3              I have asked at various times why do you need

4    that?  We stipulate that the agreement is what is covered.

5    The relationship, the revenue information we have provided.

6    I'm not clear on why they need somebody, and it's difficult

7    to find somebody, frankly.

8              THE COURT:  All right.  Mr. Delsman, what is it

9    that you are seeking that you don't have?

10             MR. DELSMAN:  The first thing we don't have --

11   well, Mr. Al-Salam --

12             THE COURT:  I just want to know exactly what it

13   is you don't have because he is --

14             MR. DELSMAN:  We don't have technical

15   information or a witness even that described exactly how

16   this automobile Street View works, to the extent that it

17   works differently than Google Earth.

18             THE COURT:  Okay.  Let me stop you there.

19             MR. DELSMAN:  Sure.  Go ahead.

20             THE COURT:  Mr. Al-Salam, have you produced a

21   witness or technical information?

22             MR. AL-SALAM:  Audi is the one who created it.

23   I don't think we have a witness that can talk specifically

24   about it, but the user interface is publicly available.  I

25   mean I'm not sure what technical information is being

1   referred to.  These are interfaces.

2           THE COURT:  All right.  I'm sorry.  I know we're

3   having trouble hearing each other.  Let me stop you there.

4           Mr. Delsman, what is the second thing that you

5   don't have?

6           MR. DELSMAN:  We don't have any testimony

7   regarding the contract or how the contract was negotiated.

8           THE COURT:  Why do you need information on how

9   the contract was negotiated?

10          MR. DELSMAN:  Well, one of the reasons why is

11  exactly what we were talking about just before, and that is

12  how was the user interface created?  There was a fee for

13  engineering work that Google did and was pretty substantial.

14  What was included in that fee?

15          Also, in the agreement, Google agrees to provide

16  help in developing these different services, these different

17  APIs and user interfaces.  So what was the fees for?  What

18  work did Google perform?  How was the amount that was

19  eventually paid different than the engineering work for the

20  fee for Street View?  How was that determined?

21          THE COURT:  All right.  Mr. Al-Salam, do you

22  want to respond to that?

23          MR. AL-SALAM:  The contract says what it says.

24  It says how much we were paid and how much -- I'm not sure

25  with the level of detail, why it's necessary.  I mean we

1    provided some assistance to Audi in creating the interface

2    that is publicly available.  We provided a witness that

3    talked about the Google API through which the interface is

4    able to access Street View.  It seems to me that there is

5    nothing left that they really need.  We will stipulate that

6    the agreement is legitimate and what is covered.  We have

7    shown all the financials.

8                    THE COURT:  All right.  Thank you.

9                    Well, I am going to go ahead and grant this

10   request as well from the plaintiff.  I think the use of the

11   technology in connection with automobiles is also in my mind

12   within the broad scope of relevance and now I think is very

13   clearly part of what is accused based on the representations

14   I have heard.

15                   It may be that Google does not have any

16   additional technical information or a witness that can

17   knowledgeably testify about how it works in a vehicle.  And

18   if that is the case, that is the case.  But the plaintiff

19   is entitled to seek that discovery from the defendant to the

20   extent the defendant has it.  And,

21                   The testimony about how the contract was

22   negotiated, I agree we are getting more and more attenuated,

23   but it is within the broad scope of relevance as the

24   plaintiff tries to put a value on the infringing uses of the

25   technology that is accused.  So I'm granting the plaintiff's

1    request.

2              To the extent the plaintiff was also seeking an

3    order compelling Google to comply with agreements that it

4    has reached, that request is denied.  I have no basis to

5    believe that Google will not do what it has agreed to do.

6              I have other folks waiting for me on another

7    call so I'm going to have to stay good-bye at this point.

8    Thank you all very much for your time.

9              (The attorneys respond, "Thank you, Your Honor.")

10             (Telephone conference ends at 9:51 a.m.)

11

12       I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

13

14                         /s/ Brian P. Gaffigan
                           Official Court Reporter
15                          U.S. District Court

16

17

18

19

20

21

22

23

24

25