IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRANSCENIC, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No.11-582-LPS |
| | : | |
| GOOGLE INC., MICROSOFT | : | |
| CORPORATION, AOL INC., and | : | |
| MAPQUEST, INC. | : | |
| | : | |
| Defendants. | : | |

Richard D. Kirk, Esq., Stephen B. Brauerman, Esq., BAYARD, P.A., Wilmington, DE.
Timothy P. Maloney, Esq., Eric L. Broxterman, Esq., Christine A. Pompa, Esq., David A. Gosse,
Esq., FITCH, EVEN, TABIN & FLANNERY, Chicago, IL.
Steven C. Schroer, Esq., FITCH, EVEN, TABIN & FLANNERY, Boulder, CO.

      Attorneys for Plaintiff Transcenic, Inc.

Frederick L. Cottrell, III, Esq., Jason J. Rawnsley, Esq., RICHARDS, LAYTON & FINGER,
P.A., Wilmington, DE.
Ramsey M. Al-Salam, Esq., Stevan R. Stark, Esq., PERKINS COIE LLP, Seattle, WA.
Matthew C. Bernstein, Esq., Cheng Ko, Esq., PERKINS COIE LLP, San Diego, CA.
Margaret D. Macdonald, Esq., PERKINS COIE LLP, Washington D.C.
Chad S. Campbell, Esq., PERKINS COIE LLP, Phoenix, AZ.
Victoria Q. Smith, Esq., PERKINS COIE LLP, Palo Alto, CA.
Melody K. Glazer, Esq., PERKINS COIE LLP, Madison, WI.

      Attorneys for Defendants Google Inc. and Microsoft Corporation.

Jeffrey L. Moyer, Esq., RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE.
Alan L. Whitehurst, Esq., Marissa R. Ducca, Esq., QUINN EMANUEL URQUHART &
SULLIVAN, LLP, Washington, D.C.

      Attorneys for Defendants AOL Inc. and MapQuest, Inc.

## **MEMORANDUM OPINION**

September 17, 2013
Wilmington, Delaware

STARK, U.S. District Judge:

Presently before the Court is the issue of claim construction of various disputed terms of

U.S. Pat. No. RE 42,289 ("the '289 patent"). The '289 patent is a reissue of U.S. Patent No.

7,050,102.

## I.    BACKGROUND

Plaintiff Transcenic, Inc. ("Plaintiff") filed this patent infringement action against

Defendants Google Inc., Microsoft Corp., AOL Inc., and MapQuest, Inc. (collectively,

"Defendants") on July 1, 2011, alleging infringement of the '289 patent. (D.I. 1, 16)  The '289

patent is entitled "Spatial Referenced Photographic System With Navigation Arrangement" and

relates to a system for capturing image data along with positional information, processing the

image data, linking it to the positional information, and displaying the image data together with

interactive controls that allow a user to navigate through the image data.

The parties completed their claim construction briefing on October 5, 2012.  (D.I. 200,

203, 238, 242)  In addition to the briefs, the parties submitted technology tutorials (D.I. 199, 202)

and expert reports (D.I. 204, 240).  The Court held a *Markman* hearing on November 19, 2012.

(D.I. 311) (hereinafter "Tr.").

## II.    LEGAL STANDARDS

"It is a bedrock principle of patent law that the claims of a patent define the invention to

which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312

(Fed. Cir. 2005) (internal quotation marks omitted).  Construing the claims of a patent presents a

question of law.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir.

1995), *aff'd*, 517 U.S. 370, 388-90 (1996).  "[T]here is no magic formula or catechism for

conducting claim construction." *Phillips*, 415 F.3d at 1324.  Instead, the court is free to attach

the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are normally used consistently throughout the patent . . . ." *Id.* (internal citation omitted).

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (internal quotation marks omitted), *aff'd*, 481 F.3d 1371 (Fed. Cir. 2007).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman*, 52 F.3d at 980. The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

A court also may rely on "extrinsic evidence," which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to

3

ensure that the court's understanding of the technical aspects of the patent is consistent with that

of a person of ordinary skill in the art, or to establish that a particular term in the patent or the

prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose

sight of the fact that "expert reports and testimony [are] generated at the time of and for the

purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.*

Overall, while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic

evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim

scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19.

Finally, "[t]he construction that stays true to the claim language and most naturally

aligns with the patent's description of the invention will be, in the end, the correct construction."

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows

that "a claim interpretation that would exclude the inventor's device is rarely the correct

interpretation." *Osram GmbH v. ITC*, 505 F.3d 1351, 1358 (Fed. Cir. 2007).

In this case, the parties agree that several disputed phrases are written in means-plus-

function format. Under 35 U.S.C. § 112, ¶ 6:

> An element in a claim for a combination may be expressed as a
> means or step for performing a specified function without the
> recital of structure, material or acts in support thereof, and such
> claim shall be construed to cover the corresponding structure,
> material, or acts described in the specification and equivalents
> thereof.

Courts follow a two-step process when construing "means-plus-function" claim terms. *Chi. Bd.*

*Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1367 (Fed. Cir. 2012). First, the

court must identify the particular claimed function. *Id.* Second, the court must look to the

specification and identify the corresponding structure for that function. *Id.* For the second step,

4

"structure disclosed in the specification is 'corresponding' structure only if the specification or

prosecution history clearly links or associates that structure to the function recited in the claim."

*B. Braun Medical v. Abbott Lab.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997).

## III.   CONSTRUCTION OF DISPUTED TERMS [1]

### A.   "database" [all claims]

| | |
|---|---|
| **Plaintiff's Proposed Construction** | "a collection of data organized for rapid search and retrieval by a computer" |
| **Defendants' Proposed Construction** | "file for storing data records" |
| **Court's Construction** | "a collection of data organized for search and retrieval by a computer" |

Plaintiff proposes to construe the term "database" in accordance with its plain and

ordinary meaning.  Defendants, by contrast, believe that the term "database" is narrowly defined

in the specification, such that the database must: (1) be limited to a file; and (2) store "data

records." (D.I. 200 at 19; Tr. at 38, 47,64)  The Court agrees with Plaintiff.

The specification does not support Defendants' proposal to limit the "database" to a

file.  The words of a claim should generally be construed in accordance with their plain and

ordinary meaning, unless an exception applies, such as where the specification includes a special

definition or the inventor intentionally narrows the meaning of the claim term.  *See Phillips*, 415

F.3d at 1312-16 (internal citations omitted).  Defendants have not identified any portion of the

specification that provides a special definition or otherwise evinces a clear intent to narrow the

---

[1]The parties have also agreed on the meaning of certain claim terms. The Court will adopt the
parties' proposed constructions for these terms.

scope of the term database.[2] The fact that the only embodiment of the '289 patent refers to a database as a "file" is not sufficient to limit the claims. *See Liebel-Flarsheim*, 358 F.3d at 906 ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.") (internal quotation marks omitted); *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) ("[P]atent coverage is not necessarily limited to inventions that look like the ones in the figures . . . . To hold otherwise would be to import limitations onto the claim from the specification, which is fraught with 'danger.'"). The Court's conclusion is also consistent with the prosecution history, given that the Examiner did not limit the term "database" to a "file" when rejecting the original claims over the prior art, and that applicants did not dispute the Examiner's understanding of the term. (D.I. 242 at 3-4; Tr. at 33)

It is undisputed that Plaintiff did not invent the database concept; many different types of databases were known in the art in 1996. (Tr. at 47) There is also no evidence (or even suggestion) that Plaintiff's invention is dependent on any specific type of database. For this additional reason, the Court will not limit the claim as Defendants propose.

The Court likewise is not persuaded that a database must store "data records." Defendants contend that the specification consistently defines a database as containing data records, citing several examples. (D.I. 200 at 20-21, Tr. at 47-49) These examples are not

---

[2]Defendants also contend that Plaintiff's construction is incorrect because it is impermissibly broad, such that it would, for example, encompass the internet. (D.I. 200 at 21, Tr. at 49) The Court does not agree because: (1) on the record presently before the Court, it is unclear whether the internet is "a collection of data organized for search and retrieval;" and (2) other claim limitations make clear that the claims do not encompass all of the internet.

definitions and do not contain "expressions of manifest exclusion or restriction." *Epistar Corp. v. ITC*, 566 F.3d 1321, 1334 (Fed. Cir. 2009).

Hence, the Court will adopt Plaintiff's proposed construction, but with one modification: the Court will remove the word "rapid" from the construction. Plaintiff did not object to this change during oral argument. (Tr. at 26)

**B.    "a database" [claims 1, 2, 6, 8, 35, 43, 51, and 77]**

| | |
|---|---|
| **Plaintiff's Proposed Construction** | "one or more databases" |
| **Defendants' Proposed Construction** | To the extent the Court chooses to construe this phrase, the term "a" should be given its plain and ordinary meaning of "one." Thus "a database" should be construed to mean "one file for storing data records" |
| **Court's Construction** | "one or more databases" |

The parties' dispute is whether "a database" must be limited to a *single* database or can, instead, include one or more databases. When used in open-ended claims, the article "a" is typically interpreted to mean "one or more." *See KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) (internal citations omitted). Defendants contend that this general rule should not apply in this case. According to Defendants, because claim 1 uses the phrase "a database," while claim 10 uses the phrase "at least one database," there is a presumption that these two phrases have different meanings. (*See* D.I. 200 at 22) (citing *Modine Mfg. Co. v. ITC*, 75 F.3d 1545, 1551 (Fed. Cir. 1996)) This presumption, however, does not compel a narrow construction in this case. As the Federal Circuit has explained, "the article 'a' receives a singular interpretation only in rare circumstances when the patentee evinces a clear intent to so limit the article." *KCJ Corp.*, 223 F.3d at 1356. The Court does not discern from the language of claims

7

1 and 10 a clear intent on the part of the inventors to limit the scope of claim 1. Moreover,

Defendants' proposed construction would – as Defendants concede (Tr. at 73-74) – exclude the

inventors' preferred embodiment, a result that is "rarely, if ever correct." *Vitronics*, 90 F.3d at

1583.

### C. "image"[3] [all claims]

| | |
|---|---|
| **Plaintiff's Proposed Construction** | "a representation of something photographed by a camera system" |
| **Defendants' Proposed Construction** | "recorded or captured video frame" |
| **Court's Construction** | Plain and ordinary meaning |

There are two issues in dispute: (1) whether an image must be captured by a video

camera; and (2) whether an image is limited to single frame of the camera. The Court concludes

that neither limitation is required.

With respect to the video camera issue, none of the claims explicitly refers to a "video

camera." Although Defendants correctly note that the sole embodiment of the '289 patent

describes using a video camera, they fail to identify any "expressions of manifest exclusion or

restriction" or other evidence that demonstrates an intent to limit the scope of the claims. *Epistar

Corp.*, 566 F.3d at 1334. The prosecution history also supports the Court's construction. During

prosecution, the Examiner relied on still-camera systems to reject the claims of the '289 patent,

---

[3]The parties agree that the Court's construction of the term "image" will also resolve their
dispute with respect to the phrase "the images captured at a same position as a prior displayed
image and depicting a closer or further away field of view than that of the prior displayed image."
(*See* Tr. at 7) Having resolved the parties' dispute with respect to "image," the Court will not
separately construe the "images captured" phrase.

8

and the inventors did not attempt to distinguish the claims on that basis. (D.I. 242 at 8)

Defendants also propose limiting the term "image" to the frame captured by the camera

– nothing more and nothing less. (D.I. 238 at 4-5; Tr. at 97-100) According to Defendants,

"images that are viewed are precisely those images that are captured, not images created by

piecing together the captured images." (D.I. 238 at 4) Defendants seek to exclude partial frames

and multiple frames stitched or superimposed together from the scope of the term "image."

Although the Court agrees that an "image" is captured by a camera, the Court will not narrow

this term as Defendants propose. The specification supports the conclusion that combined

images are within the scope of the invention. (*See* '289 patent, Col. 2, ll. 6-8) ("Devices are

known which combine images by matching features common to each of two or more images, i.e.

superimposing.") Nothing in the specification clearly excludes partial or combined images from

the scope of the claims.

Having resolved the parties' disputes, the Court concludes that no construction of the

term "image" is required.

### D. "orientation of the image" [claims 1, 2, 6, and 8]

| | |
|---|---|
| **Plaintiff's Proposed Construction** | This phrase is not ambiguous and does not require construction. If the court determines that this phrase requires construction, the court should construe it to mean: "pitch, roll, or yaw of the image" |
| **Defendants' Proposed Construction** | "pitch, roll, and yaw of the camera when the video frame was recorded or captured" |
| **Court's Construction** | Plain and ordinary meaning |

There are two issues for the Court: (1) whether orientation refers to one of pitch, roll, or

yaw, or instead refers to all three of those parameters; and (2) whether the word "orientation"

9

refers to the orientation of the *camera* when the image was captured, or orientation of the *image* itself.

As to the first issue, the Court concludes that "orientation of the image" does not require all three parameters (pitch, roll, and yaw). The Court's construction is consistent with use of the word "orientation" in the claims. *See Phillips*, 415 F.3d at 1314 ("claim terms are normally used consistently throughout the patent"). Defendants contend that "common sense" requires limiting the claim to all three orientation parameters, and that not knowing all three parameters would "frustrate the objectives" of the invention. (D.I. 200 at 15-16) But, as even Defendants acknowledge, there are several claims (*e.g.*, claim 10) that require measuring only one parameter: the yaw orientation. (Tr. at 141) Defendants' proposed construction is inconsistent with the language of claim 10 and would render that claim nonsensical.

Defendants contend that the'289 patent explicitly defines "orientation" as requiring all three parameters. (D.I. 200 at 15) (citing Col. 22, ll. 14-16 ("Activating the Orientation View command causes a child window 10180 to open up, displaying the orientation of the camera (*pitch, roll, and yaw*) graphically.") (emphasis added)) The Court does not agree. The quoted statement is made in the context of FIG. 19, which describes a specific embodiment of the movie-mapper program. In the embodiment of FIG. 19, all three parameters (pitch, roll, and yaw) are recorded, and thus all three parameters are displayed. There is no indication in the specification that the inventors intended to limit the scope of their claims to the embodiment described in FIG. 19.

The prosecution history also supports the Court's construction. For example, the original parent application (08/383,471) to the '289 patent included claims to the "orientation of said

10

camera." The Examiner rejected those claims over Kojima, which disclosed "orientation" in only one direction – the azimuth. (D.I. 180-3 at TRS000000662-664 and 668)  In response, the applicants amended the claims to specify that "orientation of said camera" includes "*at least* yaw and pitch data." If the phrase "orientation of said camera" already required all three parameters (pitch, roll, and yaw), as Defendants contend, the amendment would be redundant and inconsistent with the specification. Moreover, other claims in the '471 application (*e.g.*, claim 21) expressly required "orientation of said camera" to be defined "about three axes of rotation."

Defendants also contend that the phrase "orientation of the image" refers to the orientation of the *camera* at the time the image was captured. (D.I. 238 at 8)  Defendants' proposed construction would, thus, replace the word "image" with the word "camera." The Court will not rewrite the claims as Defendants propose.[4]

The Court's conclusion is supported by the claim language. For instance, claim 1 of the '289 patent refers to both "orientation of the image" and "camera position and orientation." Since both "orientation of the image" and "camera orientation" are found in the same claim, these terms are presumed to have different meaning. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807 (2007). Defendants offer no evidence to rebut this presumption.

---

[4]Plaintiff does not dispute that there is a relationship between the "orientation of the image" and the orientation of the camera. (Tr. at 118)

E.    "yaw orientation of the respective image" [claims 10, 22, 23, 35, 43, 51, and 77]

| | |
|---|---|
| **Plaintiff's Proposed Construction** | This term is not ambiguous and does not require construction |
| **Defendants' Proposed Construction** | "yaw of the camera when the image was recorded" |
| **Court's Construction** | Plain and ordinary meaning |

The parties' dispute over the phrase "yaw orientation of the respective image" is substantively identical to their dispute over "orientation of the image." The Court's resolution is the same as well.

F.    "camera path" [claims 1, 2, 10, 23, 31, 35, and 43]

| | |
|---|---|
| **Plaintiff's Proposed Construction** | "the path along which the camera traveled" |
| **Defendants' Proposed Construction** | "sequential positions of a camera that recorded or captured the video frames" |
| **Court's Construction** | "the path along which the camera has traveled" |

Defendants' concern with Plaintiff's construction is that it may include portions of a predetermined path where the camera has not traveled. (Tr. at 160-61) To address this concern, the Court will modify Plaintiff's construction to make clear that the claimed "camera path" includes only the path along which the camera has traveled, and does not include any portion of a path over which the camera has not yet traveled. At the hearing, the parties agreed that the Court's clarification would resolve their dispute. (Tr. at 162-63)

12

### G.  "multiple images aligned in a panorama" [claim 18]

|  |  |
|---|---|
| **Plaintiff's Proposed Construction** | This phrase is not ambiguous and does not require construction. If the court determines that this phrase requires construction, the only term that requires construction is the term "images", which the parties have already proposed constructions |
| **Defendants' Proposed Construction** | "two or more stored video frames arranged next to each other on a display" |
| **Court's Construction** | Plain and ordinary meaning |

The sole dispute is whether a "panorama" should be construed narrowly to cover only frames that are arranged next to each other, as Defendants contend.  The Court concludes that, in the context of the '289 patent, the word "panorama" does not have such a narrow meaning.

Defendants' proposed construction is largely based on the example of a "panoramic view" shown in FIG. 20 of the '289 patent, in which three frames are arranged next to each other on a display.  (D.I. 200 at 17-19)  Defendants believe that the claims should be limited to this specific embodiment.  There is no evidence, however, that the inventors intended to limit the claims to this embodiment.  *See Liebel-Flarsheim*, 358 F.3d at 906.  Rather, the specification explicitly acknowledges that "[d]evices are known which combine images by matching features common to each of two or more images, i.e. superimposing." ('289 patent at Col. 2, ll. 6-8)  The specification further explains that position and orientation information of the camera may be used to "permit[] images to be joined or sequenced for viewing . . . ." (*Id.* at Col. 2, ll. 20-26)  According to the specification, this is an improvement over the prior art because it can help to avoid distortions that can occur when attempting to join images by matching their edges.  (*Id.*)  However, nothing in the specification requires limiting a panorama to only two or more images arranged next to each other.

13

The prosecution history also supports the Court's construction. For example, the

Kojima patent – cited by the Examiner as disclosing a "panorama" – describes panoramas as

being formed from "images [that] are partially overlapped with adjacent ones." (U.S. Pat. No.

5,262,867 at Col. 1, ll. 39-44)

### H. "launch pad control" [claims 19, 32, and 43]

| | |
|---|---|
| **Plaintiff's Proposed Construction** | "selectable control overlaid on an image for executing an associated application program" |
| **Defendants' Proposed Construction** | "a control that automatically executes an associated application program when the spatial location of a displayed frame lies within a defined area for the control" |
| **Court's Construction** | "selectable control overlaid on an image for executing an associated application program" |

Defendants contend that a launch pad control must *automatically* execute an associated

application program when a frame is selected. Plaintiff responds that a launch pad control only

needs to be "selectable" and, thus, may be user activated. The Court agrees with Plaintiff.

The starting point for claim construction is the claim language. *See Interactive Gift*

*Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). The claims require a

computing device "to receive control signals *in response to selection* of at least one of the one or

more launch pad controls." (*See, e.g.*, claim 19) (emphasis added) The associated application

program is executed "in response to receiving the control signals." (*Id.*) Because the plain

language of the claims requires "selection" of the launch pad control before the application

program is executed, the Court will not limit the claims as Defendants propose. The portion of

the specification cited by Defendants does not explicitly require the associated application

program to be "automatically execute[d]," and, thus, does not clearly and unambiguously limit

14

the scope of the claims.

### I. "associated application program" [claims 19, 32, and 43]

|  |  |
|---|---|
| **Plaintiff's Proposed Construction** | This phrase is not ambiguous and does not require construction. If the court determines that this term requires construction, the court should construe it to mean: "application program associated with launch pad control" |
| **Defendants' Proposed Construction** | "an independently executable program separate from the spatially referenced photographic system" |
| **Court's Construction** | Plain and ordinary meaning |

At the hearing, the parties agreed that the phrase "associated application program" does not require construction. (*See* Tr. at 166-67)

### J. "means for displaying" [claims 1 and 2]

|  |  |
|---|---|
| **Plaintiff's Proposed Construction** | **Function:** "displaying, along with an image, a view of the camera path and an indication of the camera position and orientation when the image was recorded" |
|  | **Structure**: A computer programmed to implement in conjunction with a computer graphic user interface the Plan or Elevation functions and any of the Yaw, Pitch, Roll or Orientation functions of the Movie Mapper program 325, disclosed in Figures 19 to 35, Col. 3:14-38 and Col. 19:64 to Col. 74 of the '289 patent; Appendix C in the '471 application, and Figures 25-30 of the '471 application |

| Defendants' Proposed Construction | **Function**: "displaying, along with an image, a view of the camera path and an indication of the camera position and orientation when the image was recorded"<br><br>**Structure**: plan view: XY child window 10120 of Fig. 19, plan view: XY child window 2526 of Fig. 25 of US. App. Ser. No. 08/383,471 ("the '471 application"), and software algorithm described in PLANVIEW.H and PLANVIEW.CPP in the '471 application; indications 2536 of Fig. 25 of the '471 application, orientation window 10180 of Fig. 19, and software algorithm described in ORIENTVW.H ORIENTVW.CPP from the '471 application |
|---|---|
| **Court's Construction** | **Function:** "displaying, along with an image, a view of the camera path and an indication of the camera position and orientation when the image was recorded"<br><br>**Structure**: A computer programmed to implement in conjunction with a computer graphic user interface the Plan or Elevation functions and any of the Yaw, Pitch, Roll or Orientation functions of the Movie Mapper program 325, disclosed in Figures 19 to 35, Col. 3:14-38 and Col. 19:64 to Col. 74 of the '289 patent; Appendix C in the '471 application, and Figures 25-30 of the '471 application |

The parties agree that the "means for displaying" is a means-plus-function term within the meaning of 35 U.S.C. § 112, ¶ 6. The parties also agree that the function of this term is "displaying, along with an image, a view of the camera path and an indication of the camera position and orientation when the image was recorded." The parties disagree, however, as to the specific structure that corresponds to the identified function. The Court will adopt Plaintiff's proposed construction.

The Court's construction is supported by the specification. The parties agree that the software algorithm for displaying the "plan view" is part of the structure. Plaintiff believes that the software algorithm for the "elevation view" should be included as well. The Court agrees. "[S]tructure disclosed in the specification is 'corresponding' structure only if the specification or

16

prosecution history clearly links or associates that structure to the function recited in the claim."
*B. Braun Medical*, 124 F.3d at 1424. Here, the specification states that "[a]ctivating the
Elevation command causes an Elevational View: XZ child window 10130 to open up, displaying
the camera path of movement as seen from the side, rather than from the top. The display in all
other respects is identical to the plan view display just described." ('289 patent at Col. 21, ll. 52-
56) The specification thus clearly links the software algorithm for the elevational view to the
function of displaying "a view of the camera path."

With respect to the function of displaying "an indication of the camera position and
orientation," Defendants propose to limit the corresponding structure to include only the software
algorithm necessary to display orientation window 10180 of FIG. 19. Defendants' proposed
construction would exclude other disclosed orientation windows (*e.g.*, Yaw View window
10140) because those windows only display a single orientation parameter (yaw, pitch, or roll),
and, as explained above, Defendants would limit the term "orientation" to require all three
parameters. (D.I. 200 at 15-16) The Court has already rejected Defendants' argument with
respect to "orientation." For the same reasons, the Court will reject Defendants' proposed
structure for displaying "an indication of the camera position and orientation."

Finally, contrary to Defendants' argument, Plaintiff's construction does not encompass
"the entire movie mapper program." (D.I. 238 at 19) Rather, Plaintiff's construction only covers
"the Plan or Elevation functions and any of the Yaw, Pitch, Roll or Orientation functions of the
Movie Mapper program," which are the functions that are necessary to display "a view of the
camera path" and "an indication of the camera position and orientation."

17

## K.    Arguments Under 35 U.S.C. § 112

Defendants contend that certain claim terms are indefinite under 35 U.S.C. § 112.  In

general, these claim terms fall into two categories: (1) claim terms that include the word

"substantially;" and (2) claim terms that include the word "generally."   (D.I. 200 at 27-30)  The

Court is not persuaded with respect to either category.  *See generally Personalized User Model*

*LLP v. Google, Inc.*, 2012 WL 295048, at *22 (D. Del. Jan. 25, 2012) (stating Court "does not

permit summary judgment arguments, including indefiniteness arguments, during the claim

construction phase of the litigation").  A claim term is sufficiently definite to be construed unless

it is "insolubly ambiguous." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-

50 (Fed. Cir. 2008); *see also Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 2003 WL 124149, at

*1 n.1 (D. Del. Jan. 13, 2003).  Defendant has failed to establish "by clear and convincing

evidence that a skilled artisan could not discern the boundaries of the claim based on the claim

language, the specification, and the prosecution history, as well as her knowledge of the relevant

art area." *Halliburton*, 514 F.3d at 1249-50.

Having found that the terms "substantially" and "generally," as used in the '289 patent,

are not insolubly ambiguous, the Court concludes that no further construction for these claim

terms is required.

## IV.    CONCLUSION

For the foregoing reasons, the Court will construe the disputed claim terms of the '289

patent consistent with this Memorandum Opinion.  An appropriate Order follows.