# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRANSCENIC, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 11-582-LPS ) |
| GOOGLE INC., | ) ) **REDACTED VERSION** |
| Defendant. | ) ) ) |

### TRANSCENIC'S OPENING BRIEF IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY FROM DR. HENRY FUCHS AND FOR PARTIAL SUMMARY JUDGMENT AGAINST ANTICIPATION DEFENSE FOR CLAIMS 1, 2, 6, AND 8

October 14, 2014
**Redacted Version Filed: October 22, 2014**
OF COUNSEL:

Timothy P. Maloney
Eric L. Broxterman
Christine A. Pompa
Fitch, Even, Tabin & Flannery
120 South LaSalle Street, Suite 1600
Chicago, IL 60603
(312) 577-7000
tpmalo@fitcheven.com
ebroxterman@fitcheven.com
cpompa@fitcheven.com

- and –

Steven C. Schroer
Fitch, Even, Tabin & Flannery
1942 Broadway, Suite 213
Boulder, CO 80302
(303) 402 -6966
scschr@fitcheven.com

BAYARD, P.A.

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

Counsel for Plaintiff Transcenic, Inc.

**TABLE OF CONTENTS**

I. NATURE AND STAGE OF PROCEEDINGS ........................................................................ 1

II. SUMMARY OF ARGUMENT ............................................................................................... 1

III. BACKGROUND FACTS ....................................................................................................... 2

    A. The '289 Patent Claims Recite Image Navigation Systems Having Specific Structural Components ......................................................................................................................... 2

    B. Google Contends That The Means-Plus-Function Claims Are Invalid As Anticipated And/Or Obvious ..................................................................................................................... 3

    C. Dr. Fuchs's Expert Report Does Not Provide Any Analysis Of The Secondary Consideration of Commercial Success ..................................................................................... 4

IV. LEGAL STANDARDS ........................................................................................................... 5

    A. Unreliable Expert Testimony Is Properly Excluded ............................................................. 5

    B. Anticipation of Means-Plus-Function Claims Requires Structural Identity Or Equivalance ............................................................................................................................. 6

    C. Summary Judgment Is Appropriate Against A Defense Supported By Mere Unreliable Expert Opinion ......................................................................................................................... 7

    D. Commercial Success Is Evidence Of Non-Obviousness ....................................................... 8

V. ARGUMENT ............................................................................................................................ 8

    A. Dr. Fuchs' Opinions Regarding Anticipation Of Claims 1, 2, 6 and 8 Should Be Excluded ................................................................................................................................... 8

        1. Dr. Fuchs' Speculation Regarding The Mohl Thesis ..................................................... 9

        2. The Palenque References ............................................................................................. 12

        3. The OSU References .................................................................................................... 13

        4. Dr. Fuchs' Opinions Of Anticipation Of Claims 1, 2, 6 and 8 Should Be Excluded . 13

    B. Transcenic Is Entitled To Partial Summary Judgment Of No Invalidity For Claims 1, 2, 6 and 8 ................................................................................................................................... 14

    C. Dr. Fuchs Opinions Regarding The Contributions Of Google's Patents To The Commercial Success Of Street View Should Be Excluded ................................................... 14

VI. CONCLUSION ..................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012) .............................................................................................. 6

*Alcon Research, Ltd. v. Apotex, Inc.*,
   687 F3d 1362 (Fed. Cir. 2012) ............................................................................................... 8

*American Bearing Co. v. Litton Industries, Inc.*,
   729 F.2d 943 (3d Cir. 1984) ................................................................................................... 5

*Bourjaily v. United States*,
   483 U.S. 171 (1983) ............................................................................................................... 5

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*,
   229 F.3d 1120 (Fed. Cir. 2000) .............................................................................................. 8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................................... 7

*Cytologix Corp. v. Ventana Med. Sys.*,
   424 F.3d 1168 (Fed. Cir. 2005) ........................................................................................ 6, 12

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .................................................................................................. 1, 5, 6, 8

*Demaco Corp. v. F. Von Langsdorff Lic., Ltd.*,
   851 F.2d 1387 (Fed. Cir. 1988) .............................................................................................. 8

*Donaldson Co.*, In re,
   16 F.3d 1189 (Fed. Cir. 1994) (en banc) .......................................................................... 7, 12

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   582 F.3d 1288 (Fed. Cir. 2009) ........................................................................................ 6, 12

*General Elec. Co. v. Joiner*,
   522 U.S. 136 (U.S. 1997) ................................................................................................... 5, 6

*Inline Connection Corp. v. AOL Time Warner, Inc.*,
   No. 02-272-MPT, 2007 U.S. Dist. LEXIS 6207 (D. Del. Jan. 29, 2007) ............................... 5

*INVISTA North Am. S. àr. l v. M&G USA Corp.*,
   2013 U.S. Dist. LEXIS 88633 (D. Del. June 25, 2013) ......................................................... 9

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ........................................................................................................... 5, 6

*McGinley v. Franklin Sports, Inc.*,
   262 F.3d 1339 (Fed. Cir. 2001) (Michel, J., dissenting) ........................................................ 7

*McKesson Info. Solutions LLC v. TriZetto Group, Inc.*,
   426 F. Supp. 2d 197 (D. Del. 2006) ....................................................................................... 7

*Mott*, In re,
   557 F.2d 266, 269 (CCPA 1977) ............................................................................................ 6

*Panduit Corp. v. Dennison Mfg. Co.*,
   774 F.2d 1082 (Fed. Cir. 1985) .............................................................................................. 8

*RCA Corp. v. Applied Digital Data Systems, Inc.*,
   730 F.2d 1440 (Fed. Cir. 1984) .............................................................................................. 6

*Ryko Mfg. Co. v. Nu- Star Inc.,*
   950 F.2d 714 (Fed. Cir. 1991) ................................................................................................ 8

*Trueposition, Inc. v. Andrew Corp.*,
   2007 U.S. Dist. LEXIS 62705 (D. Del. Aug. 23, 2007) ......................................................... 7

*Wendler & Ezra, P.C. v. Am. Int'l Group, Inc.*,
 521 F.3d 790 (7th Cir. 2008) .............................................................................................. 5
**Rules**
Fed.R.Evid. 104(a) ............................................................................................................... 4
Fed.R.Evid. 403 ................................................................................................................... 5
Fed.R.Evid. 702 ................................................................................................................... 4

I.     **NATURE AND STAGE OF PROCEEDINGS**

Transcenic Inc. ("Transcenic") initiated this patent infringement action on July 11, 2011 against Google, Inc. ("Google"), Microsoft Corporation ("Microsoft"), America Online, Inc. ("AOL"), and MapQuest, Inc. ("MapQuest") and filed its amended complaint on August 4, 2011.[1]  (D.I. 1, 16.)  On September 12, 2011, each of the Defendants answered and asserted affirmative defenses and counterclaims.  (D.I. 20.)  Google, with the Court's permission, amended its affirmative defenses and counterclaims on March 17, 2014.  (D.I. 452.)  Fact discovery was completed on May 2, 2014.  (D.I. 454, 456.)  Expert discovery ended on September 12, 2014.  (D.I. 473.)  The deadline for filing *Daubert* and case dispositive motions is October 14, 2014.  (*Id.*)  A pretrial conference is scheduled for December 23, 2014 and trial is set to commence on January 12, 2015.  (D.I. 456.)

II.    **SUMMARY OF ARGUMENT**

Google's invalidity expert, Dr. Henry Fuchs, submitted expert reports proffering various opinions that Transcenic's asserted U.S. Patent RE 42,289 is invalid.  However, as established below, certain of Dr. Fuchs' opinions were formulated without the legally required analysis, are not supported by reliable methodology, or are based on the wrong legal standard and/or a legally insufficient factual predicate.  These opinions should be excluded under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Specifically, Transcenic seeks to exclude Dr. Fuchs' opinions alleging: (1) that the Mohl, Palenque and OSU references disclose structure identical or equivalent to the structure disclosed in the '289 patent corresponding to the means-plus-function limitations of claims 1, 2, 6 and 8; and (2) that the commercial success of the Google accused Street View system is attributable to

---

[1] Transcenic entered into settlement agreements with Microsoft and AOL/MapQuest and all claims, defenses, and counterclaims were dismissed via stipulation.  (D.I. 428 and 465.)

1

Google's own patents covering the system and not to the technology of the '289 patent. These opinions should be excluded because the Fuchs expert reports do not disclose the required supporting analysis, and his deposition confirmed that he did not perform the proper analysis. Cross-examination is not an adequate answer, since the flaws in Dr. Fuchs' opinions are fundamentally legal in nature, going to the correct legal standards for anticipation of means-plus-functions claims, and for secondary consideration of commercial success. Such cross-examination will be especially problematic in front of a lay jury, even if properly instructed.

Additionally, Dr. Fuchs has not opined that the means-plus-function limitations of claims 1, 2, 6 or 8 are disclosed elsewhere in the prior art in a manner that would have rendered them obvious. Therefore, if this Court excludes his testimony regarding anticipation of the means-plus-function limitations, the Court should also grant partial summary judgment against Google's defenses of anticipation and obviousness of claims 1, 2, 6, and 8.

### III. BACKGROUND FACTS

#### A. The '289 Patent Claims Recite Image Navigation Systems Having Specific Structural Components

Transcenic asserts that the Google Maps with Street View and Google Earth with Street View systems infringe the '289 patent. The patent discloses systems for capturing and storing imagery with associated positional and orientation information, displaying the imagery and its associated information, and facilitating navigation of the imagery by use of navigational controls. (Ex. A,[2] '289 Patent, Col. 3, ll. 14-38.) The claims are directed to a computer system having a database of spatial referenced images and providing an interactive user interface permitting the display of images and related spatial information in response to user selected spatial navigation

---

[2] Exhibits as cited herein are Exhibits to the Declaration of Christine A. Pompa in Support of Transcenic's *Daubert* Motion to Exclude Expert Testimony from Dr. Henry Fuchs and for Partial Summary Judgment Against Anticipation Defense for Claims 1, 2, 6, and 8 to be filed subsequently in this briefing.

controls. Four of the asserted claims (1, 2, 6 and 8) include means-plus-function limitations. Claim 1 is representative of the means-plus-function claims, and recites:

> 1. A spatially referenced photographic system comprising:
>
> a data base containing plural images of objects and also containing information corresponding to said images defining the position at which each image was originally viewed and the orientation of the image with respect to that position;
>
> image presentation and navigation means for displaying the images to a user and for facilitating the user in navigating among said images by receiving spatial movement commands from the user, as indicated by said spatial movement commands;
>
> wherein said image presentation and navigation means includes means for displaying, along with an image, a view of the camera path and an indication of the camera position and orientation when the image was recorded, wherein camera position and orientation is indicated by a mark on the path oriented as the camera is oriented to point where the camera was pointing; and
>
> wherein the view is a plan view and wherein the mark bears an indication thereon of the yaw angle of the camera.

(Ex. A, Col. 75, ll. 8-30.)

The Court construed the functions and identified the corresponding disclosed structure for these limitations. (Ex. B, Sept. 17, 2013 Order (D.I. 422).) In each instance, the identified structure is "a computer programmed to implement in conjunction with a computer graphic user interface" certain specific functions of "the Movie Mapper program 325, disclosed in Figures 19 to 35, Col. 3:14-38 and Col. 19:64 to Col. 74 of the '289 patent; Appendix C in the '471 application, and Figures 25-30 of the '471 application." (*Id.* at 2-3.)

### B. Google Contends That The Means-Plus-Function Claims Are Invalid As Anticipated And/Or Obvious

Google challenges the validity of claims 1, 2, 6 and 8 based on three primary references: a thesis by Mohl describing an "Aspen Movie Map" driving simulation system ("Mohl thesis"); a thesis and related information by Wilson related to a computerized educational tour of the

3

Palenque ruins ("Palenque references")[3]; and documentation of a roadway surveying system developed by Ohio State University ("OSU references"). Dr. Fuchs discloses opinions that claims 1, 2, 6, 8 are separately anticipated by the Palenque references and by the Mohl thesis, and that claim 1 is anticipated by the OSU references. (See Ex. C, May 30 Expert Report of Henry Fuchs at pp. i, ii.) He also disclosed obviousness opinions directed to claims 2, 6 and 8 in view of the OSU references and the Mohl thesis in combination. All of these opinions, however, only address the recited functions of the means-plus-function limitations. Dr. Fuchs did not disclose any analysis comparing the corresponding structures of the means-plus-function limitations to the structures disclosed by the Mohl thesis or the Palenque or OSU references. (Ex. C. at ¶¶ 170-210, 275-320, 391-422.)

   C. **Dr. Fuchs's Expert Report Does Not Provide Any Analysis Of The Secondary Consideration of Commercial Success**

Transcenic's expert, Dr. Bajaj, submitted an expert report rebutting Dr. Fuchs' invalidity opinions regarding each asserted claim. The Bajaj report includes an analysis of secondary considerations of non-obviousness, and specifically addresses evidence of commercial success of the accused Street View system attributable to its use of the technology covered by the '289 patent. (Ex. E, May 30, 2014 Bajaj Report, ¶¶ 334-358.) Dr. Fuchs, on the other hand, confirmed in his expert report that he has not analyzed whether the Street View product practices the claims of the '289 patent and that he is "unaware whether the Street View product has enjoyed commercial success." (Ex. C, ¶ 537.)

---

[3] Google asserts the Wilson thesis, a confidential video demo, confidential internal design documents, and unpublished photos, production plans and site routes without establishing that any of this information qualifies as prior art under Sec. 102(b). (Ex. C at ¶ 172.) This motion refers to this information collectively as the "Palenque references." Transcenic reserves its contention that one or more of these specific items do not constitute prior art.

## IV. LEGAL STANDARDS

### A. Unreliable Expert Testimony Is Properly Excluded

Expert testimony is admissible only if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" and if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702; *Daubert*, 509 U.S. at 590-591. The party offering the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1983).

To be admissible, the trial judge must determine that any expert testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (citing and quoting *Daubert*, 509 U.S. 579, 592 (1993)); Fed.R.Evid. 104(a). Conclusory testimony unsupported by sufficient factual basis should be excluded. *General Elec. Co. v. Joiner*, 522 U.S. 136, 147 (U.S. 1997); *see also Wendler & Ezra, P.C. v. Am. Int'l Group, Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.").

Expert testimony is also inadmissible when it is not relevant to the task at hand. *Daubert*, 509 U.S. at 579, 591, 597. When expert testimony conflicts with the governing law, the testimony is irrelevant and should be excluded. *American Bearing Co. v. Litton Industries, Inc.*, 729 F.2d 943, 949 (3d Cir. 1984) (ruling Fed.R.Evid. 403 gives courts authority to exclude testimony if it is contrary to the law); *see also Inline Connection Corp. v. AOL Time Warner, Inc.*, No. 02-272-MPT, 2007 U.S. Dist. LEXIS 6207, at *12-16 (D. Del. Jan. 29, 2007) (excluding testimony regarding enablement of patent disclosure where expert's underlying analysis was legally flawed).

5

The trial court acts as a "gatekeeper" to exclude expert testimony that does not meet threshold requirements for relevancy and reliability. *Kumho Tire*, 526 U.S. at 147-48 (citing and quoting *Daubert*, 509 U.S. 579, 592 (1993). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *General Elec.*, 522 U.S. at 146. Factually unsupported expert testimony regarding patent invalidity is properly excluded from trial. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012) (excluding obviousness testimony by defendant's expert that was "conclusory and factually unsupported").

### B. Anticipation of Means-Plus-Function Claims Requires Structural Identity Or Equivalance

To invalidate a patent claim by anticipation, Google must show that a "single prior art reference discloses, expressly or under principles of inherency, each and every element of a claimed invention" by clear and convincing evidence. *RCA Corp. v. Applied Digital Data Systems, Inc.*, 730 F.2d 1440, 1444 (Fed. Cir. 1984). A prior art reference does not anticipate a claim written in means-plus-function language unless it discloses structure identical or equivalent to the corresponding disclosed structure for the functional limitations of the claim. *Id.* at 1444 (stating that "absent structure in a prior art reference which is capable of performing the functional limitation of the 'means,' the prior art reference does not meet the claim.") (citing and quoting *In re Mott*, 557 F.2d 266, 269 (CCPA 1977).

Federal Circuit precedent firmly establishes that "a structural analysis is required when means-plus-function limitations are at issue; a functional analysis alone will not suffice." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1299 (Fed. Cir. 2009) (*citing Cytologix Corp. v. Ventana Med. Sys.*, 424 F.3d 1168, 1178 (Fed. Cir. 2005) (testimony "based only on a functional, not a structural analysis" is insufficient to prove infringement of a means-plus-

6

function claim)). Similarly, "a challenger who seeks to demonstrate that a means-plus-function limitation was present in the prior art must prove that the corresponding structure – or an equivalent – was present in the prior art." *Id.* (*citing In re Donaldson Co.,* 16 F.3d 1189, 1193 (Fed. Cir. 1994) (en banc)); *see also McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1361 (Fed. Cir. 2001) (Michel, J., dissenting) ("Of course, in the context of a means-plus-function claim, the invalidating prior art must disclose not simply a means for achieving the desired function, but rather the particular structure recited in the written description corresponding to that function., or an equivalent thereof."). Indeed, this Court has excluded or discounted the opinions of an expert who fails to properly address the corresponding structure of means-plus-function limitations. *See Trueposition, Inc. v. Andrew Corp.*, 2007 U.S. Dist. LEXIS 62705 (D. Del. Aug. 23, 2007); *see also McKesson Info. Solutions LLC v. TriZetto Group, Inc.*, 426 F. Supp. 2d 197, 202 (D. Del. 2006).

      **C.**    **Summary Judgment Is Appropriate Against A Defense Supported By Mere Unreliable Expert Opinion**

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party that moves for summary judgment bears the burden of identifying the parts of the pleadings and discovery on file that, together with any affidavits, show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to set forth record evidence sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24.

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and the moving party is entitled to summary judgment as a matter of law. *Celotex,* 477 U.S. at 325. Expert opinion that is clearly unreliable

does not create a genuine issue of material fact to preclude summary judgment. *See Daubert*, 509 U.S. at 596 (if "the trial court concludes that the scintilla of [expert] evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to ... grant summary judgment").

### D. Commercial Success Is Evidence Of Non-Obviousness

A showing of commercial success, attributable to the merits of the claimed invention, is relevant evidence of non-obviousness. There is no doubt that the commercial success of the infringer's product is as relevant as that of the patentee. *Panduit Corp. v. Dennison Mfg. Co.*, 774 F.2d 1082, 1099-1100 (Fed. Cir. 1985); *see also Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000). The patentee must prove a nexus between the commercial success and the merits of the invention. *Alcon Research, Ltd. v. Apotex, Inc.,* 687 F3d 1362, 1371 (Fed. Cir. 2012). Prima facie evidence of nexus is established if there was commercial success and if the invention claimed in the patent is that which was commercially successful. *Ryko Mfg. Co. v. Nu- Star Inc.,* 950 F.2d 714, 719 (Fed. Cir. 1991). A patentee is not required to prove as part of its prima facie case that the commercial success of the patented invention is not due to factors other than the patented invention. *Demaco Corp. v. F. Von Langsdorff Lic., Ltd.*, 851 F.2d 1387, 1394 (Fed. Cir. 1988).

### V. ARGUMENT

#### A. Dr. Fuchs' Opinions Regarding Anticipation Of Claims 1, 2, 6 and 8 Should Be Excluded

The asserted invalidity references disclose only sparse structural details relevant to the construed structures corresponding to the means-plus-function limitations of claims 1, 2, 6 and 8. Because critical information about the structures is absent from the record, Dr. Fuchs' expert reports entirely fail to disclose any opinion or analysis that any of these references disclose

8

structure that is identical or equivalent to the structure corresponding to the means-plus-function limitations of claims 1, 2, 6 and 8. Dr. Fuchs was required to disclose both his opinions on these issues and his full analysis of how he arrived at the opinions in an expert report. FED. R. CIV. P. 26(a)(2)(B). His failure to do so is alone sufficient grounds for exclusion. *See* FED. R. CIV. P. 37(c)(1); *see also INVISTA North Am. S. àr. l v. M&G USA Corp.*, 2013 U.S. Dist. LEXIS 88633, at *16-17 (D. Del. June 25, 2013) (striking expert report for failure to disclose opinions).

When confronted at deposition about the omission of these required opinions from his expert report, Dr. Fuchs' attempted to provide *ipse dixit* opinions to supplement the missing disclosures. However, his testimony relied on the wrong legal standards, and at the very least, failed to address the proper legal standards. He purported to explain how he formed inferences about the structures disclosed in the asserted references based on his assessment of the technical merits of how the systems functioned, as described in those references. (Ex. F, August 22, 2014 Dep. of Fuchs, at p. 152-156.) However, he neither disclosed in his reports nor testified to any analysis demonstrating that any of the references actually disclose, expressly or inherently (*i.e.*, necessarily), structure identical or equivalent to the claimed structure.

### 1. Dr. Fuchs' Speculation Regarding The Mohl Thesis

Ignoring the applicable legal standard, Dr. Fuchs proffered irrelevant opinions that emphasized ***distinctions*** that he contends make the prior art structure at least as good as the disclosed structures of the '289 patent:

> Q.. . . Is it, in fact, your opinion that the Mohl system used a structure that's identical or equivalent to the structure identified in the court's construction of this limitation?
> . . .
>
> A. ***I believe that it's at least equivalent.*** That is, when I look at the description of the navigation -- image presentation, navigation means in Mohl, Mohl goes into great detail how those are implemented. For example, that he uses not one but two video discs and goes into great detail on how the layout of the frames are and

9

how switching between the video discs in order to get optimum interactive processing with this it's at least equivalent to the brute-force image presentation navigation means of '289.

Q. So the '289 patent does not disclose using video discs, does it?

A. That's right, it does not. What it does is the most simplistic brute-force approach that a person would think of.

Q. And it doesn't disclose a technique that uses two video discs and switches back and forth between them, correct?

A. Correct.

Q. And so help me understand why you nevertheless believe that the structure is equivalent even though it doesn't disclose either of those fundamental aspects of Mohl?

A. Because the '289 patent is so simple it is the brute-force approach of looking at each image, okay, and saying how good is this image for the person who wanted to get this navigation? You know, the person wants to go forward.

*The '289 patent says*, "Here's what we're going to do: We're going to look at each image, look at the position and orientation of each image, we're going to go through it and say, 'how good is this image?' Go to the next one, 'How good is this image?' Go through the entire database of images and then whatever looks like the best one, we'll give it to the user." That is the simplest most brute-force technique anybody -- the first thing somebody would try.

*In contrast*, *Mohl says*, "Let me look at each one of these navigation means and what is the best thing that we could do? And in places where there are several possibilities, how can I limit to search for the minimum number of candidate images?"

*So it does at least as good and, in fact, much better than the structure that's in '289. That's what I concluded. It is at least equivalent.*

(Ex. F at p. 138-40) (Emphasis added).

While acknowledging that "[t]he notion of equivalence in a legal sense I'm not an expert on" (Ex. F at p. 144), Dr. Fuchs repeatedly proffered opinions of structural equivalence based on nothing more than his irrelevant view that the prior art disclosed superior operating characteristics compared to the approach of the '289 patent. He identified at least three fundamental differences between the structure Mohl discloses and that of the '289 patent means-

10

plus-function limitations. (Ex. F at p. 144-45.) He then reaffirmed that his opinion of structural equivalence is based on identified structural differences:

> Q. So we have three distinctions so far?
>
> A. Yes
>
> Q. But based on those three distinctions, you're concluding that the structures are therefore equivalent. Is that your testimony?
>
> A. Yes

(*Id*. at p. 145.) Dr. Fuchs further admitted that because Mohl does not disclose sufficient structural details, he was left to infer the disclosed structures from the functions and use hindsight gleaned from the '289 patent:

> Q. So, again, because you didn't have direct information about the disclosed structure in Mohl, you made an inference based on what you believe is a reasonable conclusion based on comparing the functions. Fair statement?
>
> A. Yes.
>
> Q. And you did that by first looking at the structure that the '289 patent discloses for the camera path, and with knowledge of that structure, making an inference about what type of structure Mr. Mohl must have used; is that fair?
>
> A. Yes.

(*Id*. at pp. 156 and 152-156 generally.)

His further elaborations confirmed again that Dr. Fuchs applied his erroneous "at least as good as" standard as a substitute for actual evidence and rigorous analysis of structural equivalence:

> Q. But, again, you didn't have any specific information on the structure of the Mohl system –
>
> A. That's right.
>
> Q. – at the application or source code level, correct?
>
> A. That's correct.

11

> Q. But you believe that it's equivalent because whatever the structure is in Mohl, it's at least as good as the structure [disclosed in the '289 patent Movie Mapper program] –
>
> A. Yes.

(Ex. F at p. 149-150; *see also* p. 153 ("In this case, we have access to source code [for the '289 patent] and we know that it's a very straightforward implementation. And so I think it's safe to conclude that another system which has the same function implements it in at least as equivalent simple fashion, if not more sophisticated.").) Dr. Fuchs further confirmed that none of this analysis was disclosed in his report. (Ex. F at p. 74-75.)

Dr. Fuchs' analysis is contrary to established law confirming that proving structural equivalence requires more than a comparison of functions. *See Fresenius*, 582 F.3d at 1299; *Cytologix Corp.*, 424 F.3d at 1178; *In re Donaldson Co.*, 16 F.3d at 1193; *McGinley,* 262 F.3d at 1361.

### 2. The Palenque References

Like the Mohl thesis, the Palenque references do not disclose sufficient structural details of the system relevant to the means-plus-function claim limitations. Dr. Fuchs confirmed that he also applied the wrong legal standard to the analysis of structural equivalence for this reference:

> Q. You did not review any actual source code of the Palenque system in analyzing whether the computer in Palenque is an equivalent or identical structure to the structure described in the Court's construction?
>
> A. That's correct.
>
> Q. You used a test of whether you could infer that the Palenque software worked at least as good as the Movie Mapper program. Did I understand that testimony correctly?
>
> A. Yes
> . . .

12

> Q. And based on your opinion that the Palenque controls must have worked at least as good, you inferred that therefore the Palenque computer was programmed in a manner equivalent to the disclosed Movie Mapper program?
>
> A. Yes.

(Ex. F at pp. 73-74.)

Dr. Fuchs further admitted that his expert reports do not disclose an analysis supporting his opinion that the structure of Palenque is "at least as good" as the structure of the '289 patent. (*Id.* at p.74-75.)

### 3. The OSU References

As mentioned above, the Fuchs reports also fail to disclose any opinions or analysis of structural equivalency with respect to the OSU references. (Ex. C at ¶¶ 391-422; Ex. D, July 25, 2014 Responsive Expert Report of Dr. Henry Fuchs at ¶¶ 101-109.)

### 4. Dr. Fuchs' Opinions Of Anticipation Of Claims 1, 2, 6 and 8 Should Be Excluded

Because Dr. Fuchs did not perform or disclose a proper technical analysis identifying specific prior art structures and comparing them to the corresponding structures identified by the Court for means-plus-function claims 1, 2, 6 and 8, his opinions that those claims are anticipated are unreliable and irrelevant to the jury's task, and should be excluded. The analysis that Dr. Fuchs allegedly conducted, but failed to disclose in his expert report, is based on legally irrelevant and entirely speculative inferences regarding whether the systems of the asserted references would have been of a design at least as good as or was at least as sophisticated as the structures of these claims. The Federal Circuit requires an assessment of structural identity or equivalency that Dr. Fuchs never performed. Because these opinions are contrary to law and lack any basis in fact, they are unreliable, would only serve to confuse the jury, and should be excluded under Fed.R.Evid. 702 and *Daubert*.

### B. Transcenic Is Entitled To Partial Summary Judgment Of No Invalidity For Claims 1, 2, 6 and 8

Because Dr. Fuchs has not conducted or disclosed a proper analysis comparing the structures of the prior art references to the structure of the '289 patent means-plus-function claims, Google cannot meet its clear and convincing burden of showing that every limitation of claims 1, 2, 6 and 8 is disclosed in any of the Mohl thesis, the Palenque references or the OSU references. Google has disclosed no other grounds of anticipation for these claims. Transcenic is therefore entitled to summary judgment that claims 1, 2, 6 and 8 are not anticipated.

Moreover, Dr. Fuchs has not asserted any opinions that the structure of the means-plus-function limitations is disclosed in other prior art references, or that it would have been obvious to arrive at the structure of these claims based on any combination of other prior art references and/or the knowledge of persons or ordinary skill in the art. In other words, Dr. Fuchs relied entirely on theories of anticipation based on his inferences regarding the structures of the Mohl thesis, and the Palenque and OSU references. Because no alternative theory of obviousness has been disclosed regarding the means-plus-function limitations, and Google has not proffered sufficient expert opinion or analysis from which a jury could reasonably conclude that these limitations would have been obvious, Transcenic is entitled to partial summary judgment that claims 1, 2, 6, and 8 are not invalid.

### C. Dr. Fuchs Opinions Regarding The Contributions Of Google's Patents To The Commercial Success Of Street View Should Be Excluded

As mentioned above, Dr. Fuchs disclaims having any opinion regarding whether Street View is a commercial success. (Ex. C at ¶ 537.) His report nevertheless speculates that "to the extent it is a success, it is likely because of factors unrelated to the claimed '289 patent." (*Id.*) Dr. Fuchs admitted at deposition that he has not performed any analysis from which to form an opinion regarding the contribution of the '289 patent to any commercial success of Street View:

14

> Q. Understood. But just in terms of the specific issue of any contribution of the '289 patent to the commercial success of Street View, you don't have an opinion on that because you haven't studied the operation and structure of Street View, nor have you reached any opinion on whether that is practiced in the '289 patent, right?
>
> A. Exactly right.

(Ex. F at p. 197-198.)

The Fuchs report nevertheless alleges without any foundation that "Google has multiple patents that cover its Street View product" and that any commercial success of Street View "is just as plausibly linked to those patents as to the '289 patent." (*Id*.) This opinion must be excluded as unreliable. Having conducted no analysis of the Street View system or of the contribution of the '289 patented technology to its commercial success, Dr. Fuchs is not in position to opine that the success is attributable to factors other than the '289 patent. Moreover, the report does not analyze, or even identify, a single Google patent, let alone demonstrate that one or more of them actually covers the Street View system, the aspects of the system they allegedly cover, or how those aspects contribute to commercial success. Dr. Fuchs has simply not performed the analysis necessary to opine that the commercial success of the Street View system is attributable to any Google patents.

Dr. Fuchs's unsupported general assertions that there are "multiple" Google patents related to Street View foretells an attempt to unfairly distract the jury from the relevant issue of how the '289 patented technology contributes to the commercial success of Street View. Because Dr. Fuchs has neither conducted an analysis to discount the contributions of the '289 patent to the commercial success, or to establish the contributions of allegedly relevant Google patents, his opinions regarding the contributions of Google patents to commercial success of Street View should be excluded.

15

## VI. CONCLUSION

For the reasons established above, Transcenic requests that the Court exclude the following expert testimony pursuant to *Daubert* and Rule 702: (1) Dr. Fuchs' opinion that the Mohl thesis, the Palenque references and OSU references disclose structures are identical or equivalent to the corresponding structures of the means-plus-function limitations of claims 1, 2, 6 and 8; and (2) his opinions that Google has patents covering Street View which contribute to the commercial success of the Street View system. Moreover, because Dr. Fuchs has not disclosed any other theory of anticipation or an opinion of obviousness regarding the means-plus-function limitations, the Court should enter summary judgment in favor of Transcenic of no invalidity of claims 1, 2, 6 and 8.

October 14, 2014
**Redacted Version Filed: October 22, 2014**
OF COUNSEL:

Timothy P. Maloney
Eric L. Broxterman
Christine A. Pompa
Fitch, Even, Tabin & Flannery
120 South LaSalle Street, Suite 1600
Chicago, IL 60603
(312) 577-7000
tpmalo@fitcheven.com
ebroxterman@fitcheven.com
cpompa@fitcheven.com

- and –

Steven C. Schroer
Fitch, Even, Tabin & Flannery
1942 Broadway, Suite 213
Boulder, CO 80302
(303) 402 -6966
scschr@fitcheven.com

BAYARD, P.A.

/s/ Stephen B. Brauerman
Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

Counsel for Plaintiff Transcenic, Inc.