# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRANSCENIC, INC., | ) |
|       Plaintiff, | ) ) ) C.A. No. 11-582-LPS |
| - vs. - | ) ) ) |
| GOOGLE INC., MICROSOFT CORPORATION, AOL INC., and MAPQUEST, INC., | ) ) ) ) |
|       Defendants. | ) ) |

## TRANSCENIC'S ANSWERING BRIEF IN OPPOSITION TO GOOGLE'S MOTION FOR SUMMARY JUDGMENT OF NO STANDING

October 31, 2014

OF COUNSEL:

Timothy P. Maloney
Eric L. Broxterman
Christine A. Pompa
Fitch, Even, Tabin & Flannery
120 South LaSalle Street, Suite 1600
Chicago, IL  60603
(312) 577-7000
tpmalo@fitcheven.com
ebroxterman@fitcheven.com
cpompa@fitcheven.com

- and –

Steven C. Schroer
Fitch, Even, Tabin & Flannery
1942 Broadway, Suite 213
Boulder, CO  80302
(303) 402 -6966
scschr@fitcheven.com

BAYARD, P.A.

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

Counsel for Plaintiff Transcenic, Inc.

**TABLE OF CONTENTS**

I. SUMMARY OF ARGUMENT ..................................................................................................1

II. APPLICABLE LEGAL STANDARDS ...................................................................................2

   A. Summary Judgment ...........................................................................................................2

   B. Patent Ownership And Legal Standing To Sue .................................................................2

III. ARGUMENT ............................................................................................................................3

   A. Google Cannot Prove The Existence Of An Express Contract To Assign Between Vincent And SME.................................................................................................................4

   B. Google Is Not Entitled To Summary Judgment That Any Agreement, If Formed, Would Have Affected Ownership Of The '289 Patent.......................................................8

      1. Even If Accepted, Vincent's Counter-Proposal Implicated Only Inventions Related To The Business Of SME, But Not SMS ........................................................8

      2. The Business Of SMS Has Not Been Shown To Relate To The '289 Patent...............10

VI. CONCLUSION......................................................................................................................14

i

# TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970) .................................................................................................................. 4

*Aggarwal v. Nexabit Networks*,
  2000 Mass. Super. LEXIS 205 (Mass. Super. Apr. 24, 2000) ................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................................. 2

*Bank v. Thermo Elemental Inc.*,
  451 Mass. 638, 648 (2008) ....................................................................................................... 8

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys.*,
  131 S. Ct. 2188, 180 L. Ed. 2d 1 (2011) ............................................................................... 2, 3

*Casavant v. Norwegian Cruise Line, Ltd.*,
  63 Mass. App. Ct. 785, 829 N.E.2d 1171 (2005) ..................................................................... 7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................................. 2

*Conte v. Bank of Am., N.A.*,
  2014 U.S. Dist. LEXIS 138323 (D. Mass. Sept. 30, 2014) ...................................................... 7

*Cradle IP, LLC v. Tex. Instruments, Inc.*,
  5 F. Supp. 3d 626 (D. Del. 2013) ............................................................................................ 11

*Dow Chem. Co. v. Nova Chems. Corp. (Can.)*,
  458 Fed. Appx. 910 (Fed. Cir. 2012) ........................................................................................ 3

*Hanzer v. Nat'l Mentor Healthcare*,
  2014 U.S. Dist. LEXIS 137822 (D. Del. Sept. 30, 2014) ......................................................... 2

*Haverhill v. George Brox, Inc.*,
  47 Mass. App. Ct. 717 (1999) ................................................................................................ 10

*Intellectual Ventures I LLC v. Canon Inc.*,
  2014 U.S. Dist. LEXIS 49617 (D. Del. Apr. 10, 2014) .......................................................... 11

*Invitrogen Corp. v. Clontech Labs., Inc.*,
  429 F.3d 1052 (Fed. Cir. 2005) .............................................................................................. 14

*Jamesbury Corp. v. Worcester Valve Co.*,
  443 F.2d 205 (1st Cir. 1971) ..................................................................................................... 8

*Nortek, Inc. v. Liberty Mutual Insurance Company*,
  65 Mass.App.Ct. 764 (2006) ..................................................................................................... 5

*Ranalli v. Fine*,
  2011 Mass. LCR LEXIS 144 (Mass. Land Ct. 2011) ............................................................... 6

*Seaco Ins. Co. v. Barbosa*,
  435 Mass. 772 (2002) ............................................................................................................. 10

*Silica Tech, L.L.C. v. J-Fiber, GmbH*,
  2009 U.S. Dist. LEXIS 73700 (D. Mass. May 19, 2009) ......................................................... 3

*SiRF Tech. v. Inter. Trade Comm.*,
  601 F.3d 1319 (Fed. Cir. 2010) ................................................................................................. 3

*Situation Mgmt. Sys. v. Malouf, Inc.*,
  430 Mass. 875 (Mass. 2000) ..................................................................................................... 6

*Tull v. Mister Donut Dev. Corp.*,
    7 Mass. App. Ct. 626 (Mass. App. Ct. 1979)............................................................................. 6
*Us Solartech v. J-Fiber, GmbH*,
    2013 U.S. Dist. LEXIS 58790 (D. Mass. Apr. 24, 2013) ..................................................... 3, 4

**Statutes**
35 U.S.C. § 261 ............................................................................................................................. 3
8 Del. C. § 259(a) .......................................................................................................................... 9

**Rules**
Fed. R. Civ. P. 56(a) ..................................................................................................................... 2
Fed. R. Civ. P. 56(c) ..................................................................................................................... 2

**Treatises**
Restatement (Second) Contracts, Section 59 (1981) .................................................................... 6

I.  **SUMMARY OF ARGUMENT**

Google's motion for summary judgment that Transcenic does not have standing to sue because the inventor Robert Vincent assigned his rights in the '289 patent to his previous employer, Siemens Medical Electronics, Inc. ("SME"), fails for multiple reasons. The motion presumes the existence of a written agreement under which Mr. Vincent assigned rights to inventions. However, there is no adequate proof that such an agreement was ever formed. The undisputed facts are that Mr. Vincent rejected the agreement proposed by SME and submitted a written counter-proposal. There is no evidence that SME took any further steps, or that a binding agreement was ever consummated. The motion, and the entire standing defense, fails for this threshold reason.[1]

Even if the existence of a binding agreement was presumed, i.e., contrary to Rule 56's mandate that reasonable inferences be drawn in Transcenic's favor, the scope of any resulting assignment obligation was limited to the business of SME. Because Google does not contend that the '289 patent relates to the SME's patient vital sign monitoring business, and could never do so, Google's motion fails for this additional reason.

Finally, even if Google had demonstrated as a matter of law that Vincent was subject to a duty to assign inventions related to the medical imaging systems business of an affiliate company, Siemens Medical Systems, Inc. ("SMS"), Google's assertion that the '289 patent relates to that business at most raises disputed fact issues. Google offers mere lawyer argument on this additional essential element of its defense, and citations to the report of an expert who has not even offered a relevant opinion on the issue.

---

[1] Transcenic moved for summary judgment against the standing defense (D.I. 489). It respectfully refers the Court to its related arguments made in support of that motion.

1

## II. APPLICABLE LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper only "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party that moves for summary judgment bears the burden of identifying the parts of the pleadings and discovery on file that, together with any affidavits, show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its burden, the non-movant must direct the court to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 323-24.

The nonmoving party may support a claim of disputed facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In determining whether a genuine issue of material fact exists, all ambiguities of fact must be resolved in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Hanzer v. Nat'l Mentor Healthcare*, 2014 U.S. Dist. LEXIS 137822, *2-3 (D. Del. Sept. 30, 2014). There is a "genuine" issue of material fact if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The central issue under Rule 56 is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### B. Patent Ownership And Legal Standing To Sue

The general rule is that "rights in an invention belong to the inventor." *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys.*, 131 S. Ct. 2188, 2192, 180 L. Ed. 2d 1 (2011). A determination of patent ownership is ultimately a matter of state law. *Silica Tech*,

2

*L.L.C. v. J-Fiber, GmbH*, 2009 U.S. Dist. LEXIS 73700 (D. Mass. May 19, 2009). Mr. Vincent was employed in Massachusetts during all relevant times. "In Massachusetts, as elsewhere in the United States, the individual inventor customarily owns the right to the invention he conceives and reduces to practice even if such conception and reduction to practice occurred while performing work for his employer." *Id.* at *39-40. There is no dispute that Mr. Vincent is the sole inventor of the '289 patent.

As with any property, an inventor can assign his rights in an invention to another party. 35 U.S.C. § 261; *Roche*, 131 S. Ct. at 2195. It is also undisputed that Mr. Vincent assigned all right, title and interest in the '289 patent to Transcenic, Inc. by written agreement dated January 16, 2009, which was recorded in the United States Patent & Trademark Office shortly thereafter. (Declaration of Robert Vincent ("Vincent Decl.") at ¶ 2.) The recording of an assignment "creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment." *SiRF Tech. v. Inter. Trade Comm.*, 601 F.3d 1319, 1327-1328 (Fed. Cir. 2010). Thus, Google has the burden to show that a party other than Transcenic owns the '289 patent. It must do so by a preponderance of the evidence. *See Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 458 Fed. Appx. 910, 925 (Fed. Cir. 2012).

**III. ARGUMENT**

Google challenges Transcenic's ownership by mere lawyer argument that Vincent had previously agreed in writing to assign the invention of the '289 patent to his employer SME. While an employer may own an employee's invention if there is an express contract to that effect, *see Us Solartech v. J-Fiber, GmbH*, 2013 U.S. Dist. LEXIS 58790, *10 (D. Mass. Apr. 24, 2013), Google cannot prove the existence of such a contract here.[2] Google therefore cannot

---

[2] Under principles of implied contract, an employer may also own an employee's invention that the employee was specifically hired to invent, even in absence of an express contract. *See Us*

3

meet its burden of proof required for summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970) (if a moving party fails to meet its burden, the motion must be denied, regardless of the adequacy of any response). At a minimum, facts relating to the formation and scope of the alleged agreement to assign are genuinely disputed, especially when viewed in the light most favorable to Transcenic, which requires denying the motion.

### A. Google Cannot Prove The Existence Of An Express Contract To Assign Between Vincent And SME

Google represents that there "is no material dispute that Mr. Vincent's 1992 Agreement with Siemens is an enforceable patent assignment agreement…." (D.I. 484 at p. 6.) But that issue is hotly disputed by Transcenic. Google's motion fails to even acknowledge, let alone contend with, the undisputable evidence confirming that no agreement was ever formed. Those essential facts include the following:

- Vincent developed the inventions of the '289 patent to solve a problem first identified by his business partner, attorney William Baggett back in about 1992. (Vincent Decl. at ¶ 10.) Baggett and Vincent formed Transcenic in 1993 to provide a vehicle for Vincent to develop the invention. (*Id.*)

- Vincent had become employed by Siemens Medical Electronics, Inc. in 1988 and left that position in October 1995. (*Id.* at ¶ 12.) Vincent was hired as a general software engineer. (*Id.*) He was not hired to solve any specific problems or to invent any technology. (*Id.*)

- At all times during Vincent's employment at SME, the primary business of the company was making and selling medical devices that monitored a patient's vital signs, such as heart rate, respiratory rate and blood oxygen levels. (*Id.* at ¶ 13.) One of these products was marketed as the SIRECUST system. (*Id.*) Vincent's employment responsibilities related solely to one particular model of this product. (*Id.* at ¶ 15.)

- When hired by SME, Vincent was not required to sign an employment agreement and did not do so. (*Id.* at ¶ 12.) Several years later, in 1992, Vincent was asked to consider a proposed Employee Patent and Secrecy Agreement (hereinafter "proposed Agreement"). (*Id.* at ¶ 17.) Vincent was informed by a representative

---

*Solartech v. J-Fiber, GmbH*, 2013 U.S. Dist. LEXIS 58790, *10. However, Google has not asserted that there was an implied contract between Mr. Vincent and SME. (D.I. 484 at p. 6.)

4

- of his employer that he was permitted to cross out any objectionable provisions before signing. (*Id.* at ¶ 17.)

- The proposed Agreement expressly defined "Company" as "Siemens Medical Electronics, Inc." (*Id.* at ¶ 18 and Vincent Decl. Ex. D at p. 1.) Paragraph 2 purported to require Vincent to assign inventions related to the actual or anticipated business of SME or of "any parent, associated or affiliated corporation, or subsidiary of the Company." (Vincent Decl., Ex. D at ¶2.)

- Vincent recognized that SME was part of a conglomerate of companies owned by the parent Siemens AG of Germany. He was aware, for example, of the separate entity Siemens Medical Systems, Inc., whose business related to medical imaging. (Vincent Decl. at ¶ 18.)

- Vincent was unwilling to accept language purporting to require that he assign inventions relating to subject matters beyond the business of his immediate employer SME. (*Id.* at ¶ 18.) He therefore rejected the proposed scope of assignment by deleting the language "or any parent, associated or affiliated corporation, or subsidiary of the Company." He wrote "deleted RV" to (i.e. his initials) below the edits to expressly draw attention to this material change. (*Id.*)

- Vincent did so with the specific intent that he would not assign any invention that related to the business of other Siemens entities, such as Siemens Medical Systems, Inc. (*Id.*) He never intended to assign to any Siemens entity rights to inventions unrelated to the patient vital sign monitoring business of SME. (*Id.* at ¶ 21.)

- Vincent made a copy for his records of the revised document, which was produced in this case. (*Id.* at ¶ 19.) He submitted the original signed counter-proposal to his employer. Vincent never received a signed copy of the agreement back from SME, and he was not contacted further regarding the matter. (*Id.* at ¶ 20.)

- In about 1993, SME merged into the Siemens entity Siemens Medical Systems, Inc. (Pompa Decl., Ex. 3, Certificate of Merger, at pp. 1-2.) The business of Siemens Medical Systems, Inc. related to medical imaging equipment such as X-Ray and CT scan machines. (Pompa Decl., Ex. 4, Klepper Dep., at pp. 29-30.)

- Although the name of the company changed, Vincent's duties and responsibilities did not. (Vincent Decl. at ¶ 23.) Vincent never had responsibilities relating to the medical imaging business of the Siemens Medical Systems, Inc. (*Id.*)

- Vincent was not asked to sign another agreement when the merger occurred. (*Id.*)

It is axiomatic that a meeting of the minds is essential to the creation of a contract. *See Nortek, Inc. v. Liberty Mutual Insurance Company*, 65 Mass.App.Ct. 764, 772 (2006).

5

According to Massachusetts law, a communicated offer creates a power to accept that which is offered. *Situation Mgmt. Sys. v. Malouf, Inc.*, 430 Mass. 875, 878 (Mass. 2000). A change to the offer's terms in any material respect constitutes a counter-offer. *See Ranalli v. Fine*, 2011 Mass. LCR LEXIS 144, *25-26 (Mass. Land Ct. 2011) (holding that where one party made an offer that was materially changed by the other party, the material change constituted a counter-offer); *Tull v. Mister Donut Dev. Corp.*, 7 Mass. App. Ct. 626, 631 (Mass. App. Ct. 1979) (holding that documents revised "in more than trifling detail" stood as a counter-offer); *see also* Restatement (Second) of Contracts § 59 (a reply to an offer which purports acceptance but is conditional on the offeror's assent to additional or different terms from those offered is a counter-offer, not an acceptance).

The proposed Agreement presented to Vincent in 1992 was a written offer by SME. It is undisputed that the company's representative invited Vincent to revise any provisions that he was unwilling to accept. (Vincent Decl. at ¶ 17.) There is no evidence in the record to challenge this critical fact. Thus, the record establishes that SME did not indicate that the proposed form of the agreement was mandatory, but instead expressed a willingness to consider a counterproposal.

The language revised by Vincent pertained to the scope of inventions that are subject to the duty to assign, which is obviously a material term. By submitting the revised document to his employer, Mr. Vincent communicated both his rejection of the original proposal and a written counter-offer for SME to accept or reject. It is undisputed that he never received a signed copy of the agreement back from SME and that SME failed to pursue the matter further. (*Id*. at ¶ 20.)

Hence, there is no evidence to support that a meeting of the minds occurred between SME and Mr. Vincent because: (1) SME's proposed Agreement was never accepted by Mr.

Vincent and (2) there is no evidence that Mr. Vincent's counter-offer was accepted by SME. *See Aggarwal v. Nexabit Networks*, 2000 Mass. Super. LEXIS 205, *2-3 (Mass. Super. Apr. 24, 2000) (no binding contract because employer did not accept a counter-offer that was created when the employee accepted only certain terms and not all the terms).

Google's motion reveals that it is in a state of denial regarding its inability to prove the existence of a binding agreement to assign. It argues that the proposed Agreement need not have been signed by SME because Mr. Vincent was the only party charged with performance. (D.I. 484 at p. 7.) This ignores that Vincent did not accept SME's proposed Agreement. He rejected it by deleting material language and submitting a signed counter-proposal. SME had an opportunity to accept the counter-proposal, but there is no evidence that it ever did so. The absence of a rejection by SME does not prove acceptance. *See Casavant v. Norwegian Cruise Line, Ltd.*, 63 Mass. App. Ct. 785, 798, 829 N.E.2d 1171 (2005) (offeree's silence does not normally operate as an acceptance).

Google's related argument that Mr. Vincent's continued employment constituted consideration sufficient to prove a binding agreement is also off the mark. Although consideration is required, the existence of a contract also requires an offer and an acceptance of that offer. *See Conte v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 138323 (D. Mass. Sept. 30, 2014) (essential elements of a valid contract are an offer, an acceptance, and consideration). As Vincent never accepted SME's proposal, and it is undetermined whether SME ever accepted Mr. Vincent's counter-proposal, Google simply cannot prove the elements of a binding agreement between Vincent and SME.

### B. Google Is Not Entitled To Summary Judgment That Any Agreement, If Formed, Would Have Affected Ownership Of The '289 Patent

#### 1. Even If Accepted, Vincent's Counter-Proposal Implicated Only Inventions Related To The Business Of SME, But Not SMS

Even if the trier of fact could find on this record that a contract had been formed, it must necessarily have reflected the more narrowly tailored assignment provisions resulting from Mr. Vincent's counter-proposal. The undisputed evidence of the proposed Agreement itself directly contradicts Google's assertion that Vincent agreed to an assignment provision encompassing the medical imaging business of the then separate company SMS. The proposed Agreement unambiguously defines "Company" as limited to "Siemens Medical Electronics, Inc." (Vincent Decl. at Ex. D at p. 1.) It does not define Company to include affiliates, successors or assigns of SME. By deleting the language in Paragraph 2 purporting to expand the scope of assignment to also include subject matter related to the business of "any parent, associated or affiliated corporation, or subsidiary of the Company," Mr. Vincent clearly revised the assignment scope to exclude the business of SMS or of any other SME affiliate. (*Id.*) Vincent's deletion of the broader language of Paragraph 2 also rendered it more consistent with the additional provision of Paragraph 8, which limited the duty to assign to only subject matters related to the actual or demonstrably anticipated research, development or business of SME only, and not of its affiliates.

The Court should therefore find as a matter of law that the language of Vincent's counter-proposal is unambiguous, and that it limited the scope of assignment to inventions related to the actual or contemplated business of SME. *See Bank v. Thermo Elemental Inc.*, 451 Mass. 638, 648 (2008)(determination of whether contract contains ambiguity is question of law for trial court); *see also Jamesbury Corp. v. Worcester Valve Co.*, 443 F.2d 205, 213 (1st Cir. 1971) (noting that, according to Massachusetts law, it would resolve any doubt over the definition of a

8

term against the employer because the "agreement was a standard form contract drawn up by the [employer]" who "had superior bargaining power."). Google has not presented any evidence or argument purporting to show that the technology of the '289 patent relates to the business of SME – manufacturing and selling medical devices to monitor a patient's vital signs. (Vincent Decl. at ¶¶ 13-15.) Google's attorney argument, and the opinions of Dr. Fuchs, relate only to patents assigned to SMS directed to medical imaging equipment. (D.I. 484 at pp. 9-12.) For this additional reason, Google has not proven that Vincent did not own the '289 patent when he assigned it to Transcenic.

The subsequent merger of SME into SMS in 1993 cannot broaden the scope of the assignment provision that Mr. Vincent was willing to accept. SME was a Delaware corporation, as was SMS. (Pompa Decl. Ex. 3 at pp. 1-2) As a matter of Delaware corporate law, when SME merged into SMS, it ceased to exist, and the continuing rights of surviving entity SMS are subject to all of the restrictions originally placed on SME. 8 Del. C. § 259(a). The relevant portion of the statute provides:

> a) When any merger or consolidation shall have become effective under this chapter, for all purposes of the laws of this State **the separate existence of all the constituent corporations, or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged, as the case may be, shall cease** and the constituent corporations shall become a new corporation, or be merged into 1 of such corporations, as the case may be, possessing all the rights, privileges, powers and franchises as well of a public as of a private nature, **and being subject to all the restrictions, disabilities and duties of each of such corporations so merged or consolidated;** and all and singular, the rights, privileges, powers and franchises of each of said corporations, and all property, real, personal and mixed, and all debts due to any of said constituent corporations on whatever account, as well for stock subscriptions as all other things in action or belonging to each of such corporations shall be vested in the corporation surviving or resulting from such merger or consolidation; ...

9

(Emphasis added.) Any agreement vesting in the surviving merger entity SMS was subject to Mr. Vincent's express restriction of the assignment provision to the actual or anticipated business of SME.

Moreover, Google's argument assumes that there is an ambiguity in the language of Par. 2 of the proposed Agreement, as revised by Vincent, which permits it to argue that the duty to assign inventions extended beyond the scope of SME's business. Should the Court find that the provision is ambiguous, then its meaning becomes a question of fact. *Seaco Ins. Co. v. Barbosa*, 435 Mass. 772, 779 (2002). To resolve the ambiguity, the fact finder may consult extrinsic evidence including the circumstances of the formation of the agreement and the intentions and objectives of the parties. *See, e.g.*, *Haverhill v. George Brox, Inc.*, 47 Mass. App. Ct. 717, 720 (1999).

Here, that evidence includes Mr. Vincent's proffered testimony that he was aware of SMS at the time he specifically deleted language that purported to reference the businesses of separate SME affiliates such as SMS, and that he specifically intended by his deletion to confine the assignment obligation to the business of SME only. (Vincent Decl. at ¶ 18.) There is no evidence refuting Mr. Vincent's intent. At a very minimum, the scope of any agreed assignment provision involves disputed issues of fact that preclude summary judgment in Google's favor.

### 2. The Business Of SMS Has Not Been Shown To Relate To The '289 Patent

Even if there had been sufficient evidence to prove a binding contract requiring Mr. Vincent to assign inventions relating to the medical imaging systems business of SMS (there is not), Google would still not be entitled to summary judgment that Transcenic lacks standing to sue. The issue of whether the '289 patents relates to the medical imaging systems business of SMS is also highly fact intensive. In arguing relatedness, Google's brief refers to a few snippets

10

from the extensive '289 patent, while ignoring the actual technology of the patent, the claim coverage, and its practical applications in the real world. A party does not show entitlement to summary judgment by substituting mere attorney argument for the factual evidence and qualified expert analysis necessary to satisfy its burden of proof. *See e.g., Intellectual Ventures I LLC v. Canon Inc.*, 2014 U.S. Dist. LEXIS 49617 (D. Del. Apr. 10, 2014) (denying motion for summary judgment and stating that "attorney argument and conclusory expert opinions are insufficient" to demonstrate there is no genuine issue of material fact); *Cradle IP, LLC v. Tex. Instruments, Inc.*, 5 F. Supp. 3d 626, 639 (D. Del. 2013) (holding that "[i]ssues of fact are raised by conflicting evidence, not by attorney argument or conclusory expert opinions.")

Neither of Google's two retained technical experts in this case (Dr. Fuchs and Dr. Grindon) have proffered relevant opinions on the subject. SMS's own corporate witness declined to assert that the '289 patent relates to SMS's business. He affirmatively acknowledged that the ground-level street view imagery systems like the accused Street View system do not relate to any business of SMS. (Pompa Decl. Ex. 4 at p. 127.) On this record, Google comes nowhere close to showing that a reasonable jury could not find in favor of Transcenic.

Google's expert, Dr. Fuchs, made only scant reference in his Opening Report to the fact that SMS owns patents related to medical imaging. Despite that Google bears the ultimate burden of proof, Dr. Fuchs provided no analysis of these patents and did not opine that they relate in any way to the invention of the '289 patent. (Pompa Decl. Ex. 1, Fuchs Opening Report, at ¶ 68.)

Transcenic' expert, Dr. Bajaj, then reviewed the identified SMS patents and opined that the invention of the '289 patent is entirely unrelated to medical imaging systems technologies

described in those SMS patents.[3] (Pompa Decl. Ex. 5, Bajaj Response Report, at ¶¶ 28-30.) Dr. Bajaj further opined that: "Mr. Vincent's inventions are directed to a different field of endeavor than what Siemens was engaged in and could not have been utilized by Siemens to enhance or improve medical imaging technologies. I do not believe that a person knowledgeable about medical imaging systems would consider Mr. Vincent's invention to relate to that technology or business." (*Id.* at ¶ 30.) Mr. Vincent will also testify that his invention is unrelated to the business of SMS. (Vincent Decl. at ¶¶24-26.)

Dr. Fuchs responded merely by summarizing three SMS patents in his Reply Report: U.S. Patent Nos. 5,123,056 ("the '056 patent"); 5,396,890 ("the '890 patent") and 5,899,861 ("the '861 patent"). (Pompa Decl. Ex. 2, Fuchs Reply Report, at ¶¶ 22-25.) He provides a few sentences describing each patent in general terms. Dr. Fuchs then offers the conclusory statement: "Each of the patents described below relate to the '289 patent in that they involve capturing, displaying, and/or navigating among interactive imagery." (*Id*. at ¶ 22.) This does not address the question of how the inventions of the '289 patent allegedly relate to the business of SMS. Furthermore, there is no evidence that SMS even practiced the technology disclosed in any of the SMS patents during Mr. Vincent's employment tenure. Google's proffered evidence fails for this additional reason.

Dr. Fuchs simply did not perform the analysis necessary to provide a relevant expert opinion on the specific issue at hand. He conceded at deposition that:

- he was unaware of Google's position that SMS owns the '289 patent (Pompa Decl. Ex. 6, Fuchs Dep. at pp. 17-18);

---

[3] Google's observation that Dr. Bajaj's professional background includes work in the field of medical imaging is obviously not evidence that the '289 patent relates to the business of SMS. (D.I. 484 at p. 10.) Dr. Bajaj's experience with medical imaging systems only solidifies his qualifications to opine that the '289 patent has nothing to do with medical imaging systems.

12

- he was not asked to give an opinion on whether SMS has a valid claim of ownership in the '289 patent (*id*.);

- he did not analyze the actual business of SMS but only reviewed certain SMS patents (*id*. at pp. 18-19);

- he did not analyze whether SMS actually practiced the technology disclosed in the '289 patent (*id*. at p. 21);

- the medical imaging equipment of SMS does not incorporate the sensory system for recording position and orientation used in the '289 patent (*id*. at p. 23); and

- he was not aware of any SMS medical imaging equipment that incorporates the features claimed in the '289 patent (*id*. at 21-26).

Accordingly, Google has not offered , and cannot offer, any relevant expert evidence to support its argument that the '289 patent relates to the business of the SMS.

Google's deposition of SMS through its corporate representative, Dr. Klepper,[4] also cuts strongly against its position. Dr. Klepper did not take the position that SMS has any ownership rights in the '289 patent under the proposed Agreement. (Pompa Decl. Ex.4, Klepper Dep., at p. 102.) He could not definitively state that the inventions of the '289 patent related to the business of SMS. (*Id*. at p. 108, 119.) Dr. Klepper provided no testimony addressing how the actual invention of the '289 patent could be implemented in connection with medical imaging systems. To the contrary, he admitted that an ultrasound image is not the same as the photographic images that the '289 patent relates to. (*Id*. at pp. 122-123.) He further acknowledged that Google's Street View system (which embodies the '289 patent) is not related to the business of SMS. (*Id*. at p. 127.) Dr. Klepper confirmed that "there is no doubt" that the preferred embodiment of the

---

[4] Siemens Medical Systems, Inc. apparently changed its name to Siemens Medical Solutions, Inc. on July 31, 2001. (D.I. 484 at FN. 3.) For purposes of this motion, Transcenic will refer to both Siemens Medical Systems, Inc. and Siemens Medical Solutions, Inc. as "SMS."

13

'289 patent is "very different" from the business of SMS.[5] (*Id.* at p. 128.)

Google's resort to citing a few sparse sentences form the '289 patent is no substitute for a proper expert analysis and direct factual evidence to demonstrate that the invention of the '289 patent relates to the medical imaging business of SMS. *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1069 (Fed. Cir. 2005) (holding that lower court erred in granting summary judgment and stating that "unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony.")

The Siemens patents are directed to the entirely different subject matter of ultrasound or x-ray imaging system. (*See* Pompa Decl. Ex. 7, '056 patent, Pompa Decl. Ex. 8, '890 patent, and Pompa Decl. Ex. 9, '861 patent.) The '289 patent does not teach that the inventions thereof have any applicability to medical imaging systems or describe any embodiment that relates to such systems. There has been no showing that the technology of the '289 patent relates to medical imaging systems at all. Indeed, Google cites testimony of Dr. Klepper describing an SMS technology for forming 3D tissue models from medical images and digitally slicing the models from various perspectives. (D.I. 484 at p. 5, 11.) The '289 patent does not disclose anything remotely similar, and Google makes no attempt to prove that it does.

## VI. CONCLUSION

For the reasons set forth above, Transcenic respectfully requests that this Court deny Google's motions for summary judgment on the defense of lack of standing. Further, the Court

---

[5] Siemens has never pursued a claim of ownership any patent of the '289 patent family in the more than 13 years since the first was publically issued in 2001, the 8+ years since the original '012 patent issued, or the 3½ years since its reissuance as the '289 patent. Its silence continued after receiving specific knowledge of the present lawsuit under the '289 patent and of Google's standing defense by at least November, 2012. On the eve before this brief was due, Transcenic's counsel received a letter from an attorney purporting to represent Siemens Medical Solutions USA, Inc. and alleging for the first time that SMS is the rightful owner of the '289 patent. (Ex. 10.) Transcenic views the letter as irrelevant and immaterial to the pending summary judgment motions, but will address it further should the Court require.

14

should grant summary judgment in Transcenic's favor and dismiss the defense from the case.

| | |
|---|---|
| October 31, 2014 | BAYARD, P.A. |
| | |
| OF COUNSEL: | /s/ *Richard D, Kirk* |
| | Richard D. Kirk (rk0922) |
| Timothy P. Maloney | Stephen B. Brauerman (sb4952) |
| Eric L. Broxterman | Vanessa R. Tiradentes (vt5398) |
| Christine A. Pompa | Sara E. Bussiere (sb5725) |
| Fitch, Even, Tabin & Flannery | 222 Delaware Avenue, Suite 900 |
| 120 South LaSalle Street, Suite 1600 | Wilmington, DE 19801 |
| Chicago, IL 60603 | (302) 655-5000 |
| (312) 577-7000 | rkirk@bayardlaw.com |
| tpmalo@fitcheven.com | sbrauerman@bayardlaw.com |
| ebroxterman@fitcheven.com | vtiradentes@bayardlaw.com |
| cpompa@fitcheven.com | sbussiere@bayardlaw.com |
| | |
| - and – | Counsel for Plaintiff Transcenic, Inc. |

Steven C. Schroer
Fitch, Even, Tabin & Flannery
1942 Broadway, Suite 213
Boulder, CO 80302
(303) 402 -6966
scschr@fitcheven.com