

222 Delaware Avenue • Suite 900  
P.O. Box 25130 • Wilmington, DE 19899  
Zip Code For Deliveries 19801

Writer's Direct Access:  
(302) 429-4208  
Email: rkirk@bayardlaw.com

December 8, 2014

Redacted Version Filed: December 11, 2014

**REDACTED VERSION**
The Honorable Leonard P. Stark
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

      Re:    *Transcenic, Inc. v. Google, Inc., et al.,* C.A. No. 11-582-LPS

Dear Chief Judge Stark:

      This letter responds to Google's December 5, 2014 letter (D.I. 553) regarding *Ericsson, Inc. et al. v. D-Link Systems, Inc. et al.,* Case No. 13-1625 (Fed. Cir. 2014). *Ericsson* confirms existing Federal Circuit case law related to reasonable royalty damages, and strongly supports the admissibility of the proffered opinions of plaintiff's damages expert, Ms. Riley.

      A brief summary of the pertinent facts and holding of *Ericsson* will provide additional context for the Court. In *Ericsson*, the damages calculations of plaintiff's expert were based on prior licenses which were themselves tied to the value of the licensed products, even though the technology being licensed related to only a component of those products. *Id.* at 37. Like Google here, defendant argued that the lower court should have excluded plaintiff's damages expert testimony based on the entire market value rule (EMVR). The Federal Circuit concluded that the district court properly ***admitted*** plaintiff's damages expert testimony.

      Google characterizes *Ericsson* as supportive of its argument that the calculation of the royalty base cannot rely on Google's reported advertising revenue despite numerous levels of apportionment. Google is wrong.

      **First**, Ms. Riley's expert opinion is consistent with *Ericsson* (as well as *VirnetX*, *Laser Dynamics* and *Uniloc*). Google omits key language from the *Ericsson* case related to the "evidentiary principle" reaffirmed in *Ericsson*. Properly read, *Ericsson* confirms that a reasonable royalty analysis requires examination of both royalty rate and royalty base, and that the entire market value may indeed be referenced in connection with the royalty base. Further, *Ericsson* explains that reasonable royalty analysis may start with the entire market value of a multi-component product, so long as the testimony does not place "undue emphasis" on the entire market value. Such evidence is admissible when presented in a manner which does not mislead the jury. The full quote provides:



The Honorable Leonard P. Stark
December 8, 2014
Page 2

> "The principle, applicable specifically to the choice of a royalty base, is that, where a multi-component product it at issue and the patented feature is not the item which imbues the combination of the other features with value, care must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product. *It is not that an appropriately apportioned royalty award could never be fashioned by starting with the entire market value of a multi-component product* – by, for instance, dramatically reducing the royalty rate to be applied in those cases - it is that the reliance on the entire market value might mislead the jury, who may be less equipped to understand the extent to which the royalty rate would need to do the work in such instances."

*Id.* at 40 (emphasis added).  To avoid potentially misleading testimony, the Court in *Ericsson* explained that potential problems are properly avoided by cautionary instructions to the jury. holding that where "the value of a multi-component product are *admitted, or even referenced* in expert testimony, the court should give a cautionary instruction regarding the limited purposes for which such testimony is proffered if the accused infringer requests the instruction."  *Id.* at 43 (emphasis added).

**Second,** Ms. Riley carefully apportions both the royalty rate and the royalty base consistent with the principles affirmed in *Ericsson*.  For example, the court in *Ericsson* explained that apportionment can be done in a number of ways including "by careful selection of the royalty base to reflect the value added by the patented feature… [or] by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof." *Id.* at 39-40.  Ms. Riley apportioned Google's advertising revenue to determine the portion of that revenue attributable to Google Maps with Street View, and further apportioned down to the value of the accused Street View system and its features.  There was no need for Ms. Riley to further apportion between patented and unpatented aspects of Street View because the entire Street View system infringes multiple patent claims, and there is solid foundation in the record showing that the patented technology is fundamental to Street View's design and operation such that there are no "unpatented" aspects of Street View that could exist or operate without the patent technology.  Google may cross-examine and argue to the contrary, but there is very strong factual foundation for Ms. Riley's opinions.

**Third,** in an alternative, corroborative approach in her proffered opinions**,** Ms. Riley carefully accounts for the important differences between _____  _____ and the hypothetical Google/Transcenic *Georgia-Pacific* license.  In any event, after observing that accounting for such differences is a "constraint," the Federal Circuit immediately confirmed that "the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." *Id.* at 42



The Honorable Leonard P. Stark
December 8, 2014
Page 3

Redacted Version Filed: December 11, 2014

If the Court requires additional briefing on the foregoing, Transcenic would be pleased to provide it.

Respectfully submitted,

*/s/ Richard D. Kirk*

Richard D. Kirk (#922)

RDK:tm
cc: All Counsel