IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRANSCENIC, INC.,

        Plaintiff,

    v.                           C.A. No. 11-582-LPS

GOOGLE, INC.,

        Defendant.

---

## MEMORANDUM OPINION

Richard D. Kirk, Stephen B. Brauerman, Vanessa R. Tiradentes, BAYARD, P.A., Wilmington, DE.

Timothy P. Maloney, Eric L. Broxterman, Christine A. Pompa, FITCH, EVEN, TABIN & FLANNERY, Chicago, IL.

Steven C. Schroer, FITCH, EVEN, TABIN & FLANNERY, Boulder, CO.

    Attorneys for Plaintiff.

Frederick L. Cottrell, III, and Jason J. Rawnsley, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE.

Ramsey M. Al-Salam, Ryan McBrayer, Stevan R. Stark, Jr., PERKINS COIE LLP, Seattle, WA.

Victoria Q. Smith, PERKINS COIE LLP, Palo Alto, CA.

    Attorneys for Defendant.

December 22, 2014
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are: (1) Google's Motion for Summary Judgment of No Standing (D.I. 481); and (2) Transcenic's Motion for Summary Judgment on Google Inc.'s Standing Defense (D.I. 488). For the reasons discussed below, the Court concludes that Transcenic has standing and, therefore, will deny Google's motion for summary judgment and grant Transcenic's motion.[1]

## I. INTRODUCTION

Plaintiff Transcenic, Inc. ("Transcenic") initiated the instant patent infringement action against Google, Inc. ("Google") ("Defendant"), Microsoft Corporation ("Microsoft"), AOL Inc. ("AOL"), and MapQuest Inc. ("Mapquest") (collectively, "Defendants") on July 1, 2011. (D.I. 1) Transcenic alleges that Defendants infringe U.S. Patent No. RE42,289 (the "'289 patent" or "the patent-in-suit"). (*Id.*) The '289 patent is entitled "Spatial Referencèd Photographic System With Navigation Arrangement" and relates to a system for capturing image data along with positional information, processing the image data, linking it to the positional information, and displaying the image data, together with interactive controls that allow a user to navigate through the image data. Microsoft, AOL, and MapQuest were dismissed in accordance with stipulations submitted by the parties on January 3, 2014 (D.I. 428) and June 6, 2014 (D.I. 465).

A jury trial against the remaining Defendant, Google, is scheduled to commence on January 12, 2015.

---

[1] Various other motions are pending in this case. They will be addressed separately, by opinion, order, and/or at the pretrial conference scheduled for tomorrow, December 23.

## II. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a ***genuine issue for trial***." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted; emphasis in original). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory

allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

**B.  Standing**

"Standing must be present at the time the suit is brought." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005). If a plaintiff lacks standing at that time, the Court lacks subject matter jurisdiction and the case must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). *See generally Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). The party "bringing the action bears the burden of establishing that it has standing." *Sicom*, 427 F.3d at 976.

As a general rule, the "rights in an invention belong to the inventor." *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys.*, 131 S. Ct. 2188, 2192 (2011). An

inventor may assign his rights in an invention, *see* 35 U.S.C. § 261, and the recording of an assignment "creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment." *SiRF Tech. v. Int'l Trade Comm.*, 601 F.3d 1319, 1327-28 (Fed. Cir. 2010). "[U]nless there is an agreement to the contrary, an employer does not have rights in an invention which is the original conception of the employee alone." *Roche*, 131 S. Ct. at 2195 (internal quotation marks omitted).

## III. DISCUSSION

The Court will not repeat the disputed and undisputed pertinent facts, as they are well-known to the parties and are thoroughly addressed in the extensive briefing the parties have provided on the standing issue. (*See* D.I. 484, 489, 513, 517, 534, 535) Instead, the Court provides below the conclusions which collectively dispose of the standing motions.

1. There was no meeting of the minds between the sole inventor of the patent-in-suit, Robert Vincent, and his employer at the time he conceived of his invention, Siemens Medical Electronics, Inc. ("SME"). *See Lucey v. Hero Intern. Corp.*, 281 N.E.2d 266, 269 (Mass. 1972) (binding contract requires "meeting of the minds," so "[a]n agreement to enter into a contract which leaves the terms of that contract for future negotiation is too indefinite to be enforced").[2] The undisputed evidence establishes that SME made an offer to Vincent, in the form of a proposed Agreement, and Vincent made a counter-offer[3] materially altering the scope of his

---

[2]It is undisputed that in January 2009, Vincent assigned all right, title, and interest in the patent-in-suit to Transcenic, and, in that same month, recorded that assignment with the U.S. Patent and Trademark Office.

[3]*Ranalli v. Fine*, 2011 Mass. LCR LEXIS 144, 606 (Mass. Land Ct. 2011) ("[A] materially different proposal . . . can only be viewed as a rejection . . . and must be treated as yet another counteroffer."); *Tull v. Mister Donut Dev. Corp.*, 7 Mass. App. Ct. 626 (1979)

4

assignment obligation. Specifically, SME's proposed version of the Agreement would have required him to assign all inventions that were "related to my work with the Company or . . . related in any matter to the company business actually engaged in, or anticipated at the time [of] termination of my employment by the Company *or any parent, associated or affiliated corporation, or subsidiary of the Company*," while Vincent's counterproposal deleted the emphasized term, as indicated by Vincent's strikeout and annotation "*deleted R.V.*" below it. (D.I. 489 at 13) (emphasis added; internal punctuation omitted)  There is no evidence that SME ever accepted Vincent's counter-offer (i.e., that his obligation to assign inventions was restricted to those "related to" his work with *SME* or "related in any matter to" the business of *SME*). It follows that there was no meeting of the minds and no enforceable assignment contract was formed between Vincent and SME.

2.  Even if there were an enforceable assignment contract between Vincent and SME, the terms of that agreement would require Vincent to assign inventions that related to the work that his employer – i.e., SME – was engaged in or anticipated engaging in during the times Vincent was employed with SME. This is a consequence of the amendment made to the Agreement as it was proposed to him by SME. In particular, as already noted, Vincent struck the proposed requirement that he assign all inventions that relate to "any parent, associated or affiliated corporation, or subsidiary of" SME, and limited his assignment obligation to those inventions that relate just to *SME*. The fact that, subsequent to reaching this agreement (assuming for purposes of this analysis that there was any agreement), SME, through a corporate transaction, became part of Siemens Medical Systems, Inc. ("SMS"), could not have unilaterally

---

(explaining that document revised "in more than trifling detail" is counter-offer).

expanded Vincent's assignment obligations to encompass all inventions related solely to the business of *SMS* and not also related to the business of *SME*.[4] To hold otherwise would essentially mean that there was nothing Vincent could have done to have precluded this outcome, given that prevention of this outcome is the only reasonable inference to be drawn from the deletion Vincent made to SME's proposal. Further, because Google only presents evidence regarding the relatedness of the patent-in-suit to *SMS*'s medical imaging business (*see* D.I. 517 at 11-14; D.I. 534 at 4-6), no reasonable juror could find that Vincent's invention was related to the business of *SME*.

In sum, Transcenic is the presumed owner of the patent-in-suit. The record does not contain evidence from which a reasonable factfinder could conclude that Transcenic lacks standing. Accordingly, the Court will resolve the standing defense in Transcenic's favor. An appropriate order follows.

---

[4]As Transcenic aptly states, "The issue is not whether the proposed Employment Agreement was assignable to SMS, but rather whether the Employment Agreement can be re-written to expand the subject matter of Mr. Vincent's obligation to assign to include the business of SMS, where the counteroffer Google claims that SME accepted, limited the scope of assignment to SME only." (D.I. 535 at 9)